STATE of Wisconsin, Plaintiff-Respondent,

v.

John Lee SCHAEFER, Defendant-Appellant.†

Court of Appeals

*No. 01–2691–CR. Oral argument January 28, 2003.—Decided July 24, 2003.*

2003 WI App 164

(Also reported in 668 N.W.2d 760.)

† Petition to review granted 10-1-03.

727

On behalf of the defendant-appellant, the cause was submitted on the briefs and oral argument of *Jefren E. Olsen*, assistant state public defender of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief and oral argument of *Sandra L. Nowack*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Dykman, Roggensack and Lundsten, JJ.

¶ 1. DYKMAN, J. John Lee Schaefer appeals from a judgment convicting him of eighteen counts of possession of child pornography, contrary to WIS. STAT. § 948.12 (2001–02).[1] He contends that the warrant issued for the search of his home and personal computer was not based upon probable cause and was vague and overbroad. In addition, Schaefer argues that § 948.12, Wisconsin's child pornography statute, is de-

_____

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

void of a scienter element and therefore unconstitutional. Finally, Schaefer asserts that charging and convicting him of several counts of possession of child pornography violates the double jeopardy prohibitions of the Fifth Amendment of the United States Constitution and article I, section 8 of the Wisconsin Constitution. We reject Schaefer's arguments and affirm.

## BACKGROUND

¶ 2. On July 20, 1998, Special Agent Michael Vendola applied to Judge Murach for a warrant to search Schaefer's home for evidence of child pornography, sexual exploitation of a child and child enticement. Judge Murach authorized the warrant and the police executed a search, seizing Schaefer's computer and Zip disks.[2] Based on material found on one of the Zip disks, the district attorney charged Schaefer with thirty-nine counts of possession of child pornography. Schaefer moved to suppress the results of the search, arguing that the search warrant was defective. In addition, he moved to dismiss the complaint, alleging that WIS. STAT. § 948.12 is unconstitutional. Finally, he sought dismissal of all charges but one on multiplicity grounds. The trial court denied these motions. Schaefer pleaded no contest to eighteen counts of possession of child pornography and the State dismissed the other counts. Schaefer appeals.

---

[2] A "Zip disk" is a computer disk that may have as much as a 700 MB capacity, generally used to archive data from a computer's hard drive.

## DISCUSSION

### I. Probable Cause

¶ 3. Schaefer contends that the affidavit in support of the search warrant does not provide probable cause to search his home because the information in the affidavit was either stale or failed to indicate current possession of child pornography. We conclude that the warrant-issuing judge had a substantial basis for concluding that there was probable cause to issue the warrant to search Schaefer's residence and further, the warrant was not overbroad.

¶ 4. When considering an application for a search warrant, the issuing magistrate is

> to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Illinois v. Gates*, 462 U.S. 213, 238 (1983). We give great deference to the magistrate's determination that probable cause supports issuing a search warrant. *State v. Ward*, 2000 WI 3, ¶ 21, 231 Wis. 2d 723, 604 N.W.2d 517. We will uphold the determination of probable cause if there is a substantial basis for the warrant-issuing magistrate's decision. *Id*. This deferential standard of review "further[s] the Fourth Amendment's strong preference for searches conducted pursuant to a warrant." *State v. Kerr*, 181 Wis. 2d 372, 379, 511 N.W.2d 586 (1994) (citations omitted).

¶ 5. Before issuing a warrant, a magistrate must be "apprised of sufficient facts to excite an honest belief in a reasonable mind that the objects sought are linked with the commission of a crime, and that the objects sought will be found in the place to be searched." *State v. Starke*, 81 Wis. 2d 399, 408, 260 N.W.2d 739 (1978). While the warrant judge may draw reasonable inferences from the evidence presented in the affidavit, *State v. Benoit*, 83 Wis. 2d 389, 399, 265 N.W.2d 298 (1978), an affidavit in support of a warrant that contains nothing but the legal conclusions of the affiant is insufficient to establish probable cause. *State v. Higginbotham*, 162 Wis. 2d 978, 992, 471 N.W.2d 24 (1991). "The defendant bears the burden of proving insufficient probable cause when challenging a search warrant." *State v. Jones*, 2002 WI App 196, ¶ 11, 257 Wis. 2d 319, 651 N.W.2d 305.

¶ 6. We are limited to the record that was before the warrant-issuing magistrate. *Higginbotham*, 162 Wis. 2d at 989; *Aguilar v. Texas*, 378 U.S. 108, 109 n.1 (1964) ("It is elementary that in passing on the validity of a warrant, the reviewing court may consider *only* information brought to the magistrates attention."), *abrogated by Gates*, 462 U.S. 238 (1983). Thus we confine our review to the search warrant and Officer Vendola's supporting affidavit, submitted to the issuing judge on July 20, 1998. Attached to Officer Vendola's affidavit are two additional documents: a listing of his qualifications in the area of child sexual abuse/exploitation and an eighteen-point summary, based on his training and experience, of the traits exhibited by preferential child molesters.

¶ 7. Vendola defines "preferential child molesters" as "persons whose sexual objects are children. They receive sexual gratification and satisfaction from actual, physical contact with children and from fantasy involving use of pictures or other photographic or art mediums." Typical characteristics of preferential child molesters are: collecting sexually explicit materials such as photographs, magazines, motion pictures, videos and books in which children are sexual objects; corresponding with other preferential child molesters to share information about victims and to gain psychological support; collecting photographs, not necessarily sexually explicit, of children with whom they are or have been involved; using sexual aids and sexually explicit materials in the seduction of their victims; and maintaining diaries of their sexual encounters with children. In order to gain access to their desired victims, preferential child molesters engage in activities and programs of interest to children. Further, "[p]referential child molesters rarely, if ever, dispose of their sexually explicit materials, especially when [they are] used in the seduction of their victims, and those materials are treated as prize possessions." Thus, "[p]referential child molesters go to great lengths to conceal and protect from discovery, theft and damage, their collections of illicit materials." Finally, "[p]referential child molesters will not stop or remain with one victim, but will constantly seek out new victims."

¶ 8. Vendola's affidavit sets forth the facts supporting his application for the search warrant for Schaefer's residence. First, Vendola described the numerous sexually explicit materials featuring juvenile males that the Outagamie County Sheriff's Department seized in February 1990 from a storage facility rented by Schaefer and from Schaefer's home. Schaefer ulti-

732

mately pleaded no contest to one charge of possession of child pornography and received a stayed two-year prison sentence and three years' probation. At that time, Vendola interviewed Daniel, age seventeen, and William, age sixteen, Schaefer's adopted sons. Both boys denied having any sexual contact with Schaefer.

¶ 9. In 1996, however, Daniel Schaefer made a statement to the City of Menasha Police in which he stated that Schaefer had molested him and his brother beginning when Daniel was twelve years old and continuing until 1989, when Daniel was seventeen. In addition to forcing Daniel to have oral sex, Schaefer would film him in various stages of dress and undress. Schaefer threatened to kill Daniel if Daniel told anyone about the sexual abuse. Daniel stated that he and his brother denied any sexual abuse in 1990 because they were afraid of Schaefer. Daniel added that when police executed the search warrant for Schaefer's home in 1990, they missed a large metal box containing nude and sexually explicit images of Schaefer, Daniel and William in the form of Polaroid photographs, videotapes and reel-to-reel movies. To establish the truth of his statements, Daniel displayed a Polaroid photo, taken by Schaefer and showing Daniel dressed only in boxer shorts. Daniel appeared to be between ten and twelve years old in the picture. Also in 1996, Daniel informed the police officer that about two-and-one-half weeks previously he had broken into Schaefer's home in Appleton and "observed several (about 10) Polaroid snapshots of nude boys (holding their penises) in a medium-sized shoe box in dad's closet . . . ."

¶ 10. In response to Daniel's statements, the sheriff's department, having received the information from the Menasha Police, notified the Outagamie County Department of Human Services and began an

investigation of Schaefer's contacts with children. Schaefer became aware of the investigation and informed the Department of Human Services that he was innocent and that in the future he would be careful to make sure there were witnesses around when he was with children. Interviews by Sergeant Kobiske of the Outagamie County Sheriff's Department with juvenile males who knew Schaefer revealed that Schaefer had a "cool" computer system with video games and internet access. Schaefer allowed these teenagers to use his computer to play games or to do schoolwork, but part of his computer was security locked because it had "adult stuff" on it. Schaefer also had a swimming pool that children used during the summer.

¶ 11. Schaefer moved from Appleton to Freemont, Wisconsin, in 1997. In 1998 the Freemont Police Department conducted a number of examinations of Schaefer's trash. Among the items seized were: papers showing that Schaefer had an email account and internet access, a printout of a story in which the author describes being sexually abused by an adult male when the author was twelve years old, including acts of fellatio and fondling of genitalia, and another sexually explicit narrative involving juvenile and adult males that had been downloaded from an internet news group. Vendola knew that a year earlier, in a separate child pornography investigation, the evidence included a sexually explicit photograph of two adult males engaging in sodomy and fellatio with a twelve- to fourteen-year-old juvenile male. The image had been downloaded from the same news group as the story found in Schaefer's trash.

¶ 12. In addition to numerous photofinishing envelopes, Schaefer's refuse contained twenty-three shredded and cut-up photographs. When reassembled,

several of the photographs depicted juvenile males wearing only underwear. Eighteen of the photographs were Polaroids that had been destroyed in a particular fashion: the outer edges of the photographs were cut into five or six fairly large pieces, but the centers of the photographs, depicting the juvenile males, "appear[ed] deliberately cut with a sharp instrument into many tiny pieces." One of the Polaroids showed Daniel Schaefer, at the age of eleven or twelve, standing in his underwear near a Christmas tree. This and other Polaroid photographs bore dates from the early- and mid-1980's and were very similar to the photographs seized in the 1990 searches of Schaefer's storage shed.

¶ 13. In July 1998, Schaefer moved from Freemont to Pine River. Vendola obtained and executed the search warrant for Schaefer's new home that same month.

¶ 14. Vendola's affidavit asserted that Schaefer's activities "are consistent with that of a preferential child molester . . . sexually attracted to juvenile males, whose sexual preference extends to a minimum, in the age range of 9 years old to eighteen years of age." He further asserted that the facts documented that Schaefer had a twenty-four-year history of receiving sexually oriented material in which boys are sex objects, based on the materials dated from 1974 onwards that were seized in the 1990 investigation.

¶ 15. Vendola opined that Schaefer's discarding of the Polaroid photographs of juvenile males in their underwear was consistent with the behavior of a preferential child molester, although in general, those individuals "rarely, if ever" dispose of their sexually explicit materials. Vendola speculated that the computer-generated images now available are of better quality than the Polaroids, and thus the older, less detailed

photographs were no longer as desirable. Moreover, Vendola stated that, in his experience, the small volume of discarded items represented only "a very tiny fraction of the material currently possessed" by the typical child pornography collector. And, based upon Schaefer's internet access and the fact that he had downloaded a narrative from a news group from which child pornography was available, it was likely that Schaefer's personal computer contained pornographic material that he had downloaded from the internet. For these reasons, Vendola concluded that juveniles in Schaefer's company were at risk of being sexually exploited or being exposed to sexual materials.

¶ 16. Schaefer raises several challenges to the probable cause for the search warrant. First, he asserts that the finding of probable cause rests solely upon his status as a convicted possessor of child pornography. Second, while he does not contend that Vendola's description of the general characteristics of preferential child molesters is inaccurate in any way, Schaefer disputes that his actions, as described in the affidavit, establish that he acted in a manner consistent with the profile. He argues that Vendola's affidavit does not provide a substantial basis for the warrant because none of the materials retrieved from Schaefer's trash were illegal. He also contends that Daniel's accusations of sexual abuse are not credible, and at any rate, Daniel's descriptions of the photographs he saw in 1996 are conclusory and therefore do not support the conclusion that the photographs showed sexually explicit conduct. Schaefer also claims that there is no evidence of recent illegal activity. Without such evidence, Schaefer submits that the probable cause determination impermissibly relied upon stale information and

there was not a substantial basis for the issuance of the search warrant. We disagree.

¶ 17. "[E]very probable cause determination must be made on a case-by-case basis, looking at the totality of the circumstances." *State v. Multaler*, 2002 WI 35, ¶ 34, 252 Wis. 2d 54, 643 N.W.2d 437. Schaefer's approach would have us focus on individual parts of Vendola's affidavit, and ignore the statements viewed in their entirety, and the reasonable inferences that may be drawn from those facts. Schaefer's assertion that because none of the items recovered from his trash were illegal to possess, the evidence does not add to probable cause, is incorrect. It is well settled that otherwise innocent conduct can supply the required link in the chain to establish probable cause that a crime has or is about to be committed. *See Kerr*, 181 Wis. 2d at 380–83. Although an individual fact in a series may be innocent in itself, when considered as a whole, the facts may warrant further investigation. *United States v. Arvizu*, 534 U.S. 266, 277–78 (2002) (holding that facts, which by themselves suggested a "family in a minivan on a holiday outing," when viewed collectively with other facts amounted to reasonable suspicion).

¶ 18. The cut-up pictures found in Schaefer's trash established that he retained his interest in juvenile males as sex objects. Common sense tells us that most people do not maintain photographs of juveniles clad in their underwear, nor do people meticulously cut up photographs about to be discarded. Further, Schaefer had internet access and had visited an internet site where visual child pornography was available for downloading. The narratives he printed out explicitly described sexual encounters between adults and juvenile males. Daniel's statement that at Schaefer's

home in 1996 he saw Polaroids of boys "holding their penises," suggests that Schaefer's interest in child pornography did not end after his 1992 conviction for possession of child pornography. Daniel's description is sufficient to infer that sexual conduct, and not mere nudity, was portrayed in the pictures. And, although Daniel's denial in 1990 that Schaefer sexually abused him raises some doubts regarding his 1996 allegations, Daniel's statements. that Schaefer repeatedly threatened to kill him if he told anyone about the assaults weighs in favor of finding Daniel to be credible. ·

¶ 19. Nor are we persuaded that the warrant was supported by stale information and thus lacked reasonable evidence that Schaefer would possess unlawful materials in 1998. "When the activity is of a protracted and continuous nature, the passage of time diminishes in significance." *State v. Ehnert*, 160 Wis. 2d 464, 469–70, 466 N.W.2d 237 (Ct. App. 1991). "[T]he nature of the criminal activity under investigation and the nature of [the objects] being sought have a bearing on where the line between stale and fresh information should be drawn in a particular case." *Id.* at 470. Schaefer does not contest Vendola's description of the habits of preferential child molesters. Vendola stated that collectors of child pornography go to great lengths to protect their sexually explicit materials and rarely, if ever, dispose of them. Given Daniel's report to police in 1996 that he broke into Schaefer's home when Schaefer was not there and saw Polaroids of juvenile males in a shoe-box in a closet, there is no reason to infer that Schaefer would have thrown the pictures away, despite the fact that Schaefer moved three times in the interim.

¶ 20. Next, we consider Schaefer's complaint that there is no information in Vendola's affidavit that

Schaefer either downloaded visual child pornography from the internet or that anyone ever observed pornographic images on his computer, and so there is no nexus between his computer and evidence of child pornography or sexual exploitation. We agree with the State that Schaefer's computer was "a significant tool in allowing him access to children" and to child pornography, and that there existed ample probable cause justifying the search of Schaefer's computer files.

■■■

¶ 21.　The police may search all items found on the specified premises that are plausible repositories for objects named in the search warrant. *State v. Andrews,* 201 Wis. 2d 383, 403, 549 N.W.2d 210 (1996). Schaefer actively cultivated the friendship of teenage boys by inviting them into his home to use his "cool" computer. He used his computer to communicate with others interested in stories about adults sexually assaulting children and he visited internet sites where child pornography was available for downloading. In addition to these facts, computer files are now a common manner of storing photographs.[3] Viewed in light of these factors, it is reasonable to infer that Schaefer used his computer to collect and store child pornography.

¶ 22.　In sum, this is not a case where the only evidence for a search warrant is a prior conviction. The prior conviction takes its place in a brick-by-brick case for probable cause, but it is far from the only brick. With or without the deference we are to accord to a magistrate's probable cause determination, we conclude

---

[3] Computer image files are aptly described as "electronic photograph albums." *See State v. Multaler,* 2002 WI 35, ¶ 67, 252 Wis. 2d 54, 643 N.W.2d 437.

that the search warrant for Schaefer's home and computer was supported by probable cause.

*Scope of Search Warrant*

¶ 23. We now consider Schaefer's argument contesting the language and scope of the search warrant. The Fourth Amendment to the United States Constitution mandates that warrants "particularly describe the place to be searched, and the persons or things to be seized." The particularity requirement serves three purposes by preventing general searches, the issuance of warrants on less than probable cause, and the seizure of items different from those described in the warrant. *State v. Petrone*, 161 Wis. 2d 530, 540, 468 N.W.2d 676 (1991). "Elaborate specificity" regarding the items to be seized is not required in affidavits for search warrants, and if a more specific description is not available, general descriptions are permitted. *State v. Noll*, 116 Wis. 2d 443, 451, 343 N.W.2d 391 (1984). The officers executing the search warrant "are entitled to the support of the usual inferences which reasonable people draw from facts." *State v. Marten*, 165 Wis. 2d 70, 75, 477 N.W.2d 304 (Ct. App. 1991). A warrant is sufficiently particular when an officer reading the warrant's description would reasonably know what objects are to be seized. *Noll*, 116 Wis. 2d at 450–51.

¶ 24. Although we accord deference to the warrant-issuing court's probable cause determination, whether the language of the search warrant meets constitutional requirements for reasonableness is a question of law and our review is de novo. *State v. Meyer*, 216 Wis. 2d 729, 744, 576 N.W.2d 260 (1998).

¶ 25. Schaefer lodges a number of individual objections to the warrant's list of items to be seized. He argues that items four and six are not described with sufficient particularity because there is inadequate guidance regarding what the officer is to seize. Item four describes "[p]hotographs, movies, slides, videotape, negatives, and/or undeveloped film which would tend to identify . . . any other juvenile." Item six instructs the executing officers to seize "[m]agazines, books, movies, and photographs depicting nudity and/or sexual activities of juveniles or adults, as well as collections of newspaper, magazines, or other publication clippings of juveniles which tend to demonstrate a particular sex and age preference of JOHN LEE SCHAEFER." According to Schaefer, the scope of these descriptions permits a general search because they conceivably encompass all material in his possession relating to sexuality. Thus Schaefer contends that the descriptions extend beyond unlawful material to items that are protected expression under the First Amendment.

¶ 26. Schaefer is correct that when First Amendment rights are implicated, the items to be seized must be described with increased particularity. *See Marcus v. Search Warrant*, 367 U.S. 717, 731–33 (1961). But the crimes being investigated were sexual exploitation of a child and possession of child pornography. Child pornography is not protected expression. *New York v. Ferber*, 458 U.S. 747 (1982). And, while the search warrant allows for seizure of a large volume of materials, Schaefer does not object to the statement in Vendola's affidavit that preferential child molesters use a variety of sexually explicit materials in the seduction of their victims. Thus even lawful pornography, when evaluated with other materials, may be evidence of

child exploitation or of exposing minors to harmful materials. Again, it is irrelevant that the search encompasses lawful materials, as such things may still be circumstantial evidence of criminal activity.

¶ 27. Item twelve authorizes seizure of "[r]elevant images of juveniles estimated to be of varying ages, which are stored in electronic form on a computer system and/or as traditional photographs." Schaefer objects to this description as lacking particularity because it is unlimited; there is no qualifying language restricting seizure to images displaying nudity, suggestive poses or sexually explicit acts. Because item twelve can be read as essentially permitting the seizure of any picture of a juvenile, Schaefer submits that this part of the search warrant is overbroad.

¶ 28. Unlike Schaefer, we do not read item twelve in isolation. The description in item twelve refers to "relevant images of juveniles." The preceding items specify that sexual conduct involving juveniles is the focus of the warrant. An officer would reasonably discern that "relevant images" are those showing juveniles in a sexual manner. Moreover, as the State points out, authorizing the seizure of every photograph of a child is reasonable when investigating the crime of child exploitation. Even lawful photographs could help to identify children with whom the accused has interacted, thereby aiding in the discovery of other victims.

¶ 29. We conclude that the affidavit and warrant are not constitutionally defective. Reviewed in the context of a child pornography and sexual exploitation investigation, the items to be seized are described with sufficient particularity and provide adequate guidance for the executing officer.

## II. Constitutionality of Wis. Stat. § 948.12

¶ 30. Schaefer facially challenges the constitutionality of Wis. Stat. § 948.12 on the ground that the statute does not require the State to establish scienter as an element of the offense. The constitutionality of a statute presents a question of law that we review de novo. *State v. Trochinski*, 2002 WI 56, ¶ 33, 253 Wis. 2d 38, 644 N.W.2d 891. Generally, statutes enjoy a presumption of constitutionality. *State v. Weidner*, 2000 WI 52, ¶ 7, 235 Wis. 2d 306, 611 N.W.2d 684. When a statute implicates First Amendment rights, however, the burden falls on the State to demonstrate beyond a reasonable doubt that the statute is constitutional. *State v. Zarnke*, 224 Wis. 2d 116, 124–25, 589 N.W.2d 370 (1999).[4]

¶ 31. WISCONSIN STAT. § 948.12 provides in pertinent part as follows:

> **Possession of child pornography. (1m)** Whoever possesses any undeveloped film, photographic negative, photograph, motion picture, videotape, or other recording of a child engaged in sexually explicit conduct under all of the following circumstances is guilty of a Class I felony:
>
> (a) The person knows that he or she possesses the material.

---

[4] While possession of child pornography does not fall under the protections of the First Amendment, nonobscene sexually explicit materials depicting persons over the age of eighteen are protected speech. Our examination of Wis. Stat. § 948.12 involves the boundary between protected and unprotected speech, *State v. Zarnke*, 224 Wis. 2d 116, 124 n.2, 589 N.W.2d 370 (1999), and therefore the burden to establish constitutionality is borne by the State.

(b) The person knows the character and content of the sexually explicit conduct in the material.

(c) The person knows or reasonably should know that the child engaged in sexually explicit conduct has not attained the age of 18 years.

¶ 32. Schaefer claims that by allowing conviction for possession of child pornography when a defendant "reasonably should know" that the child depicted is under eighteen years of age, WIS. STAT. § 948.12 omits a scienter requirement for the offense. He contends that in expressing the intent element regarding the minority of the depicted child in the pornographic materials as "knows or reasonably should know," the legislature created a statute that allows conviction for mere negligence. In Schaefer's view, "reasonably should know" invokes the objective "reasonable man" standard applied in civil tort actions, the result being that WIS. STAT. § 948.12 creates criminal liability for those individuals who lacked actual knowledge but, through ignorance, mistake or accident, failed to exercise reasonable care and possessed pornographic material depicting children. However, we conclude that the statute is not constitutionally deficient with regard to scienter.

¶ 33. Scienter is "[a] degree of knowledge that makes a person legally responsible for the consequences of his or her act or omission; the fact of an act's having been done knowingly, esp[ecially] as a ground for civil damages or criminal punishment." BLACK'S LAW DICTIONARY 1347 (7th ed. 1999). The term scienter is interchangeable with *mens rea. State v. Collova,* 79 Wis. 2d 473, 479, 255 N.W.2d 581 (1977).

744

¶ 34. Like obscenity statutes, laws criminalizing child pornography present the risk of self-censorship of constitutionally protected material, and therefore "criminal responsibility may not be imposed without some element of scienter." *Ferber*, 458 U.S. at 764–65 (citing *Smith v. California*, 361 U.S. 147 (1959)). In *United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994), the Court considered whether a federal statute prohibiting the interstate distribution of child pornography contained a scienter requirement regarding the age of minority of the performer. The Court held that "knowingly" in the statute must be read to also modify the elements of the minority of the performers and the sexually explicit nature of the material. *X-Citement Video* applied the rule that "the presumption in favor of a scienter requirement should apply to each of the statutory elements that criminalize otherwise innocent conduct." *Id.* at 72. In a child pornography statute, the age of minority "indisputedly possesses the same status as an elemental fact because nonobscene, sexually explicit materials involving persons over the age of 17 are protected by the First Amendment." *Id.* Accordingly, "the age of the performers is the crucial element separating legal innocence from wrongful conduct," *Id.* at 73, and therefore "a statute completely bereft of a scienter requirement as to the age of the performers would raise serious constitutional doubts." *Id.* at 78.

¶ 35. The Wisconsin Supreme Court addressed the constitutionality of Wis. Stat. § 948.12 in *Zarnke*, 224 Wis. 2d 116, and adopted *X-Citement Video*'s view that "the age of the performer is an elemental fact, and . . . the government must prove some level of scienter as to the performer's minority." *Id.* at 131. For this reason "a defendant who is in no position to garner the

age of the minor may not be held strictly liable where the individual depicted is in fact a minor." *Id.* at 131–32. The court agreed with *X-Citement Video*'s observation that the opportunity for mistake as to age " 'increases significantly once the victim is reduced to a visual depiction, unavailable for questioning by the distributor or receiver.' " *Id.* at 132 (quoting *X-Citement Video*, 513 U.S. at 72 n.2). Accordingly, in *Zarnke*, the supreme court held that Wisconsin's child pornography statute impermissibly created strict liability for such defendants when it provided for an affirmative defense of proof of age because an accused distributor of child pornography "is never in the position to have the child-victim exhibit to him or her an 'official document' that is required of the affirmative defense." *Id.* As written, the court held that the statute relieved the State of the burden to prove scienter as to the minority of the performer. Although the court held that scienter was a constitutionally required element, it declined to discuss "the level of scienter that would withstand scrutiny." *Id.* at 132–33.

¶ 36. After *Zarnke*, the legislature modified Wis. Stat. § 948.12 to place the burden on the State to prove that the defendant "knows or reasonably should know that the child engaged in sexually explicit conduct has not attained the age of 18 years." We must now determine if "knows or reasonably should know" satisfies the "some element of scienter" required by *Ferber* and its progeny. We conclude that it does.

¶ 37. First, Wis. Stat. § 948.12 is no longer a strict liability statute. "The basic concept of strict liability is that culpability is not an element of the offense and that the state is relieved of the burdensome task of proving the offender's culpable state of mind." *State v.*

*Brown*, 107 Wis. 2d 44, 53, 318 N.W.2d 370 (1982). By requiring the State to show that the defendant either has actual knowledge or "reasonably should know" that the pornography depicts a minor, § 948.12 precludes convictions in those situations where it would be impossible for the defendant to discover the age of the child. But the question remains, "What is meant by 'reasonably should know?' "

¶ 38. According to the State, "reasonably should know" in WIS. STAT. § 948.12 requires proof of the defendant's "awareness of information that would have led a reasonable person to conclude that the image depicted was a child." Thus, § 948.12 now satisfies *Zarnke*'s "some level of scienter" requirement because it does not impose strict liability, and nothing more is necessary under the constitution.

¶ 39. Schaefer does not concede that "reasonably should know" and "reason to know," reflect the same level of scienter. He argues that "reasonably should know" is less than actual knowledge and compares to the standard used in civil negligence actions to define the level of knowledge imputed to the hypothetical "reasonable man." He asserts that by using a level of scienter of "reasonably should know," WIS. STAT. § 948.12, requires a defendant to persuade the jury that he or she took reasonable steps to ascertain the ages of the minors depicted in the images, a task that may not be possible when pornography is obtained from the internet.

¶ 40. Ordinary negligence is a failure to exercise ordinary care, that is, "the care which a reasonable person would use in similar circumstances." WIS JI— CIVIL 1005. "A person is not using ordinary care and is negligent, if the person, without intending to do harm,

does something (or fails to do something) that a reasonable person would recognize as creating an unreasonable risk of injury or damage to a person or property." *Id.* We disagree with Schaefer's contention that the presence of "reasonably" to modify "know" creates a civil negligence standard.[5] WISCONSIN STAT. § 948.12 is a criminal statute, and thus the burden is on the State to prove beyond a reasonable doubt the defendant's intentional possession of the materials and his awareness of the facts indicating that the pornographic images are of children. The Supreme Court has approved scienter expressed as "reason to know" and "a belief or ground which warrants further inspection or inquiry" as a sufficient level of scienter in statutes criminalizing obscenity. *See Ginsberg v. New York,* 390 U.S. 629, 643–44 (1968); *Mishkin v. New York,* 383 U.S. 502, 510–11 (1966). The difference between "reason to know," and "reasonably should know," if a difference exists, is slight. Moreover, contrary to Schaefer's suggestion, nothing in *Zarnke* or other case law precludes a scienter standard that is lower than actual knowledge. By requiring only "some level of scienter," something less than actual knowledge is permissible.

¶ 41. Delineating the precise level of scienter in a criminal statute is a policy decision reserved for the legislature. We conclude that, in a criminal statute for possession of child pornography, "reasonably should know" is less than actual knowledge but still requires more than the standard used in civil negligence actions.

---

[5] Under WIS. STAT. § 939.23(1), "[w]hen criminal intent is an element of a crime in chs. 939 to 951, such intent is indicated by the term 'intentionally' . . . or some form of the verbs 'know' or 'believe.' "

"Criminal negligence" after all, is defined as "something less than wilful and wanton conduct which, by the law of this state, is the virtual equivalent of intentional wrong." *State ex rel. Zent v. Yanny*, 244 Wis. 342, 347, 12 N.W.2d 45 (1943).[6] The State must show that the defendant had an awareness of certain facts and information that would have caused a reasonable person to conclude that the persons depicted in the materials were minors. The burden is not on the defendant to show that he attempted to ascertain the age of the photographed individuals. Considered in that light, Wis. Stat. § 948.12 is not constitutionally infirm because, as amended, it requires the "some level of scienter" that was lacking in the version of the statute examined in *Zarnke*.

### III. Multiplicity

¶ 42. Finally, we turn to Schaefer's contention that the thirty-nine counts of possession of child pornography are multiplicitous. The complaint charged Schaefer with thirty-nine counts of possession of child pornography based on the individual images found on the Zip disk removed from Schaefer's computer. Schaefer eventually pleaded no contest to eighteen counts. He now asserts that all but one charge should be dismissed on multiplicity grounds.

¶ 43. Multiple punishments for a single criminal offense violate an individual's constitutional right to be free from double jeopardy. *State v. Sauceda*, 168 Wis. 2d

---

[6] WISCONSIN STAT. § 939.25(1) provides that criminal negligence is "ordinary negligence to a high degree."

486, 492, 485 N.W.2d 1 (1992).[7] The issue of whether or not charges are multiplicitous presents a question of law subject to de novo review. *State v. Trawitzki*, 2001 WI 77, ¶ 19, 244 Wis. 2d 523, 537, 628 N.W.2d 801, *modified by State v. Davison*, 2003 WI 89, 263 Wis. 2d 145, 666 N.W.2d 1.

■

¶ 44. We employ a two-prong test when analyzing a multiplicity challenge: (1) whether the charged offenses are identical in law and fact; and (2) whether the legislature intended multiple offenses to be charged as a single count. *State v. Anderson*, 219 Wis. 2d 739, 746, 580 N.W.2d 329 (1998), *modified by State v. Davison*, 2003 WI 89, 263 Wis. 2d 145, 666 N.W.2d 1. The first step is a constitutional issue. If the charges are identical in law and in fact, they violate the double jeopardy clauses of the state and federal constitutions. *Trawitzki*, 244 Wis. 2d 523, ¶ 21.[8] Only if we conclude that the charges are different do we reach the second prong, a question of statutory construction regarding the allowable unit of prosecution intended by the legislature. *State v. Rabe*, 96 Wis. 2d 48, 63, 291 N.W.2d 809 (1980).

---

[7] The Fifth Amendment to the United States Constitution provides in part: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb."

Under article I, section 8 of the Wisconsin Constitution, "no person for the same offense may be put twice in jeopardy of punishment."

[8] *But see State v. Davison*, 2003 WI 89, ¶ 36, 263 Wis. 2d 145, 666 N.W.2d 1, ("Although [the statement that offenses identical in law and fact are multiplicitous in violation of double jeopardy] is usually true, it is not always true, because the legislature may have intended to authorize cumulative punishments for the same offense.").

¶ 45. With respect to the first prong, it is undisputed that the charges are identical in law because they arise under the same statute, WIS. STAT. § 948.12. Thus our inquiry focuses on whether the charges are identical in fact. This issue requires a determination of whether the charged acts are "separated in time or are of a significantly different nature." *State v. Eisch*, 96 Wis. 2d 25, 31, 291 N.W.2d 800 (1980).

¶ 46. The time element does not turn on the number of seconds or minutes between the alleged criminal acts. *See Anderson*, 219 Wis. 2d at 749–50. Rather, this factor looks to whether the defendant had sufficient time for reflection between the acts to recommit himself to the criminal conduct. *State v. Koller*, 2001 WI App 253, ¶ 31, 248 Wis. 2d 259, 635 N.W.2d 838. Similarly, charged offenses are of a significantly different nature when, despite being the same type of act, they evince "a new volitional departure in the defendant's course of conduct." *Id.* (citation omitted).

¶ 47. Because Schaefer pleaded guilty to eighteen counts of possession of child pornography, we base our review not on an evidentiary record but on the criminal complaint and statements made at the pretrial hearing to determine if the charges are identical in fact. *See, e.g., Anderson*, 219 Wis. 2d at 748; *Koller*, 248 Wis. 2d 259, ¶¶ 33–38 (discussing difference between multiplicity challenges to charging and multiplicity challenges to proof at trial).

¶ 48. Schaefer argues that the charges are identical in fact, and therefore multiplicitous, because the police found all the pornographic photographs on a single computer Zip disk, and there is no evidence that he acquired each image with a separate volitional act. The State, relying on *Multaler*, submits that each

individual image may be charged as a separate offense, and the complaint is sufficient because each charge pertains to a picture of a different child. We agree with the State that *Multaler* is dispositive on this issue.

¶ 49. In *Multaler*, the supreme court considered a multiplicity challenge to a possession of child pornography prosecution. The State charged Multaler with seventy-nine counts, based upon the number of pornographic photographic images retrieved from his computer. Multaler ultimately pleaded guilty to twenty-eight counts. On appeal he argued that the number of computer disks (two) determined the number of permissible charges for violating WIS. STAT. § 948.12, not the number of pornographic images contained on the disks. The supreme court disagreed and concluded that the charges were not identical in fact:

> Although some of the downloaded image files contained multiple images, there were more than 28 separate image files. In a statement given after his arrest, Multaler admitted that he "began downloading . . . in the winter of 1998," thus suggesting that he obtained the image files over a period of time. *Even had he downloaded all the image files in a very short period of time, the fact that there were more than 28 separate files supports a conclusion that he made a new decision to obtain each one.* Every time he downloaded a new file, he recommitted himself to additional criminal conduct. Each decision to download more child pornography represented a new volitional departure.

*Maltaler*, 252 Wis. 2d 54, ¶ 58 (emphasis added).

¶ 50. The criminal complaint against Schaefer alleged that he possessed thirty-nine separate image files, each depicting a child engaged in sexually explicit conduct. Each file is identified by a different name, such

as File Aspty.054.jpg, File Batj07.jpg, File Billi16.jpg, etc. Given these facts, we conclude that, as the supreme court determined in *Multaler*, it is reasonable to assume that the existence of multiple files on the Zip disk demonstrates that Schaefer made a new decision to download a particular image file.[9] Therefore, each image file "represent[s] a new volitional departure," and the charges against Schaefer are different in fact.

¶ 51. Schaefer attempts to factually distinguish *Multaler*, asserting that here there is no statement indicating that the images were downloaded over a period of time, so the new volitional departure standard is not met. Instead, he submits that "[t]he only thing known about the images is that they were all possessed simultaneously on a single [Z]ip disk."

¶ 52. We are not persuaded by Schaefer's effort to distinguish *Multaler*. In *Koller*, we explained:

> When a defendant complains prior to trial that criminal charges improperly split a single crime into multiple counts because the alleged factual basis does not show a "new volitional departure," the pertinent question is whether the State has alleged facts which, if proven, demonstrate a new volitional departure. However, just because the State has properly alleged facts for purposes of multiplicity analysis does not mean the State can prove the alleged facts. Thus, apart from whether there is a basis for a multiplicity challenge to pretrial allegations, events at trial, or otherwise may suggest that the State is unable to actually prove a new volitional departure supporting multiple charging.

*Koller*, 248 Wis. 2d 259, ¶ 34. We take this opportunity to further clarify the appropriate question when

_____

[9] Detective Vendola's affidavit stated that Schaefer's computer had internet access.

a multiplicity challenge is directed at charging by restating and modifying the first sentence from ¶ 34 in *Koller*: When a defendant complains prior to trial that criminal charges improperly split a single crime into multiple counts because the alleged factual basis does not show a "new volitional departure," the pertinent question is whether the facts alleged by the State, and reasonable inferences from those facts, demonstrate a new volitional departure.

¶ 53. Schaefer's argument is better suited to a multiplicity objection made during or at the end of trial. Had we a full evidentiary record to review, it is possible that the State's allegations may not withstand a multiplicity challenge. For example, evidence that images were copied wholesale from another disk or computer could convince the trial court that the charges were not different in fact and therefore only one count should be considered by the jury. But here we have only the charging document and the evidence from the pretrial hearing. Under these circumstances, we determine that *Multaler* is dispositive. Thus, the fact that there were over thirty-nine separate image files "supports a conclusion that [Schaefer] made a new decision to obtain each one." *Multaler*, 252 Wis. 2d 54, ¶ 58. Here a reasonable inference from the alleged fact that each photograph was contained in a separate computer file is that Schaefer downloaded each file separately and made a separate volitional decision to retain each file.

¶ 54. When the charges are different in fact, we apply the presumption that the legislature intended multiple punishments. *Anderson*, 219 Wis. 2d at 751. In order to rebut this presumption, the defendant must show a clear indication of legislative intent to the contrary. *Id.* Schaefer contends that Wis. Stat. § 948.12

is ambiguous as to whether the legislature intended multiple punishments. According to Schaefer, the legislature's use of the indefinite pronoun "any" to refer to the prohibited "pictorial reproduction," permits two reasonable interpretations regarding the allowable unit of prosecution. "Any" can be defined as "only one" or it may be reasonably read to mean "one or more." *State v. Church*, 223 Wis. 2d 641, 650, 589 N.W.2d 638 (Ct. App. 1998). Rather than applying the presumption that the legislature intended multiple punishments, Schaefer argues that we should invoke the rule of lenity and construe WIS. STAT. § 948.12 in favor of the defendant. *See State v. Kittilstad*, 231 Wis. 2d 245, 267, 603 N.W.2d 732 (1999) ("rule of lenity" provides that penal statutes be construed in favor of the accused). Under Schaefer's reasoning, employing the rule of lenity would limit the number of charged offenses for possession of child pornography to the media upon which the prohibited images are contained. Because the charged offenses arise from images found on one of Schaefer's computer disks, he concludes that more than one charge for violating § 948.12 is multiplicitous.

¶ 55. *Multaler* considered and rejected this argument, and we, of course, are bound by the supreme court's precedent.[10] *Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997). In *Multaler*, the court held that the intended unit of prosecution under WIS. STAT. § 948.12 is each pornographic image; the manner in which the images were stored did not dictate the number of charges. "The singular formulation of these items covered under the statute modified by the term

---

[10] Schaefer acknowledges that we are bound by *Multaler*, 252 Wis. 2d 54, but raises the multiplicity issue to preserve it for future appellate review.

'any' is evidence that the legislature intended prosecution for each photograph or pictorial reproduction." *Multaler*, 252 Wis. 2d 54, ¶ 64. Further, the court concluded that it was not inappropriate to impose punishment for each separate image:

> If the proper unit of prosecution were limited to the disk or other storage device, an individual could possess thousands of images depicting children in sexually explicit activity and face only [one] charge under § 948.12 . . . .

> In essence, because it appears that the images on the disks were photographs of actual children, the disks served as electronic photo albums. The language of § 948.12 shows that the legislature would deem it appropriate to bring separate charges for separate photographs in a traditional photo album. Similarly, the legislature presumably would deem separate charges appropriate for individual images displayed in an electronic photo album.

*Id.*, ¶¶ 66–67.

¶ 56. Like the child pornography considered in *Multaler*, the images Schaefer possessed on his computer disk are amenable to the supreme court's electronic photo album analogy. Accordingly, we have little difficulty concluding that the charges against Schaefer are not multiplicitous because they are different in fact and separate charges for individual images are consistent with the legislative intent. We note, however, that it is inevitable that there will be future cases in which advances in technology and the access to child pornography via the internet will present facts which might not fall so neatly under *Multaler*.[11]

---

[11] For example, if the accused downloads several images at once, that are contained in a single computer file, is that still on

## CONCLUSION

¶ 57. In sum, we conclude that Officer Vendola's affidavit provided a substantial basis for the warrant-issuing judge to conclude that there was a fair probability that the evidence sought by the search warrant would be found at Schaefer's residence. The scope of the search warrant was not overbroad such that a police officer would not reasonably know what items are to be seized. WISCONSIN STAT. § 948.12 contains the requisite element of scienter and therefore is not constitutionally defective. Finally, we conclude that the eighteen charges of possession of child pornography are not multiplicitous.

*By the Court.*—Judgment affirmed. ↕

---

par with a traditional photo album or is that more like a magazine, which is generally not divided into separate counts for each picture? *See City of Madison v. Nickel,* 66 Wis. 2d 71, 83–84, 223 N.W.2d 865 (1974) (single sale of four obscene magazines charged as four obscenity offenses under city ordinance precluding sale of obscene material). Under WIS. STAT. § 948.12, the use of the term "motion picture" indicates legislative intent that possession of one movie is a single offense, although a reel of film could contain thousands of individual images. Similarly, the statute refers to a videotape in the singular form. But what if several movies are copied onto one DVD or videotape? It does not appear that *Multaler,* 252 Wis. 2d 54, provides a ready answer to such situations.