COURT OF APPEALS
DECISION
DATED AND FILED

January 6, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP95-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2016CF242

IN COURT OF APPEALS
DISTRICT IV

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JAMES B. PEMBERTON, II,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Juneau County: PAUL S. CURRAN, Judge. *Affirmed*.

Before Blanchard, P.J., Fitzpatrick, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. James B. Pemberton, II, pro se, appeals the judgment convicting him of possessing tetrahydrocannabinols (THC) (more than 200 grams but less than 1,000 grams) with intent to deliver as a party to a crime. He also appeals the order denying his postconviction motion. Pemberton argues that the search warrant which the police executed at his residence was not supported by probable cause and that he has newly discovered evidence warranting plea withdrawal. We reject both of these contentions and affirm.

## BACKGROUND

¶2 In executing a search warrant at Pemberton's residence, police discovered evidence of a marijuana grow operation. As a result, the State charged Pemberton with possession with intent to deliver THC as a party to a crime, maintaining a drug trafficking place as a party to a crime, and possession of drug paraphernalia.

¶3 After the State prevailed at a suppression hearing triggered by Pemberton's motion challenging the sufficiency of the search warrant affidavit, Pemberton entered a plea of guilty to possession with intent to deliver THC as a party to a crime.

¶4 Pemberton filed a postconviction motion, arguing that he had newly discovered evidence proving that there was inaccurate information in the affidavit for the search warrant. Alternatively, he argued that his trial counsel was ineffective for not seeking out and discovering the allegedly inaccurate information.

¶5      The circuit court held an evidentiary hearing before denying Pemberton's motion. Additional background information is included below as necessary.

## DISCUSSION

### A.      Challenge To The Search Warrant Affidavit.

¶6      Pemberton argues that the circuit court erred when it denied his motion to suppress. He contends that the search warrant affidavit lacked probable cause to search his residence. We conclude that one reasonable inference from all of the information in the search warrant affidavit was that Pemberton was a regular drug dealer who kept drugs that he was selling at his residence.

¶7      In reviewing a challenge to a search warrant, we give deference to the judge's decision to issue the warrant. *See State v. Sloan*, 2007 WI App 146, ¶8, 303 Wis. 2d 438, 736 N.W.2d 189. Our review is limited to the record as it existed before the judge at the time the warrant was issued. *See id.* The inquiry before us is whether the judge "was 'apprised of sufficient facts to excite an honest belief in a reasonable mind that the objects sought are linked with the commission of a crime, and that they will be found in the place to be searched.'" *Id.* (quoted source omitted). "We will uphold the decision to issue the warrant unless the facts in the supporting affidavit 'were clearly insufficient to support a finding of probable cause.' In reviewing a probable cause assessment, we examine the totality of the circumstances." *State v. Casarez*, 2008 WI App 166, ¶10, 314 Wis. 2d 661, 762 N.W.2d 385 (quoted source omitted).

¶8      Here, the search warrant affidavit, which sought objects related to the manufacture, distribution, or delivery of controlled substances or controlled

substance analogs, set forth allegations of fact based on averments of three police officers that we now detail.

¶9 On October 23, 2016, an anonymous source contacted Officer Richard Lueneberg of the Mauston Police Department. The source said that her son had been buying marijuana from a person named Joey Bayne for over one year. According to the source, Bayne would travel approximately once a week to pick up the marijuana he sold. The source further indicated that Bayne lived "on Hwy 80 between New Lisbon, WI and Elroy, WI."[1] Officer Lueneberg looked up the driver's license for a Joey Bayne, which listed an address of "N5391 State Rd[.] 80[,] New Lisbon, WI 53950." Officer Lueneberg averred that this address was "consistent with the anonymous source's statement" regarding Bayne's residence location.

¶10 Five days later, Officer Nick Wilke of the New Lisbon Police Department learned from a confidential informant ("CI 16-007") that a person named "Jimmy" was dealing THC in the City of New Lisbon on a regular basis. CI 16-007 said that he knew "Jimmy" because they had mutual friends. According to CI 16-007, "Jimmy" went by the name "Osiris Grissom" on Facebook and was also known to Officer Wilke to go by the name of "Batman." CI 16-007 believed that "Jimmy" lived in the county, not the city. Through other information provided to Officer Wilke, "Jimmy" was identified by his Facebook profile as Pemberton. According to the affidavit: "This association was made by comparing pictures on [Pemberton's] Facebook and his Wisconsin Driver's

---

[1] We take judicial notice of the fact that Elroy and New Lisbon are located approximately 12 miles apart and are connected by State Trunk Highway 80.

License Photo. This association was also made by comparing [Pemberton's] address from his driver's license to pictures in his Facebook account." Officer Wilke averred that he knew CI 16-007 to be credible and reliable based on their previous interactions. He also stated that CI 16-007's information "was validated and found to be true about the identity of James/Osiris/Batman."

¶11 Nearly a month later, on November 26, 2016, Officer Kyle Walker, also of the New Lisbon Police Department, learned from a confidential informant ("CI 16-032") that Pemberton was "transporting and distributing marijuana in the City of New Lisbon and surrounding areas." CI 16-032 said that he had purchased marijuana from Pemberton on several occasions "in the City of New Lisbon near the intersection of South Division Street and West Pearl Street as well as at [CI 16-032's] residence in New Lisbon." According to CI 16-032, Pemberton had a fictitious "Facebook profile name of 'Osiris Grissom' and commonly used the nicknames 'Batman' or 'Jimmy' with people he did not know." Pemberton would sell marijuana using his Chevrolet Cruze. While CI 16-032 "never purchased marijuana from [Pemberton's] residence," he knew that Pemberton "resided in or near Elroy, Wisconsin." CI 16-032 relayed that Pemberton would "only have a specific amount of marijuana on his person while a sale was being done and he would have to leave to obtain more drugs for another sale."

¶12 Officer Walker averred that he found CI 16-032 to be truthful and reliable in making these allegations by (1) making a positive comparison between the profile photo of "Osiris Grissom" on Facebook and Pemberton's driver's license photo, (2) discovering that Pemberton was the registered owner of a Chevrolet Cruze, and (3) learning through Pemberton's vehicle registration and driver's license that he lived at "N5391 State Road 80, New Lisbon, which is located between New Lisbon and Elroy." Separately, Officer Walker averred that,

to the officer's knowledge, CI 16-032 had been honest in all his past interactions with Officer Walker.

¶13    Also, according to the search warrant affidavit, on December 6, 2016, Officer Walker took his drug detection dog to "the New Lisbon School" and had the dog sniff the locker of William Pemberton (not the defendant, James). During a "free air sniff" (that is, a sniff of the air generally and not of any particular object) outside this locker, the dog alerted to the odor of an illegal drug. William Pemberton also resided at N5391 State Road 80 in New Lisbon.

¶14    Turning from the averments in the affidavit to Pemberton's motion to suppress, Pemberton argued that, while the search warrant affidavit "may have provided probable cause to search [his] vehicle, it lacked any connection to the Pemberton residence itself." On appeal, he continues to argue that neither the anonymous source nor the confidential informants provided allegations that created a nexus between any drug offense and his residence. He challenges the execution of the free air sniff at the school and asserts that the police should have done more to corroborate the information they received from the anonymous source and the confidential informants.

¶15    In *State v. Ward*, 2000 WI 3, 231 Wis. 2d 723, 604 N.W.2d 517, our supreme court stated that the information presented to the warrant-issuing judge supported a reasonable inference that drug-crime evidence would be found at the defendant's home. This information included a person identifying the individual who supplied him with marijuana as "Lance who lives on Royce" street. *Id.*, ¶¶29-30. Our supreme court explained that, based on the information that the person obtained marijuana from Lance where Lance lived and the large quantity of drugs involved, "[t]he obvious and reasonable inference is that Lance dealt drugs

6

from his home." *Id.*, ¶30. The court continued: "It is not the only inference that can be drawn, but it is certainly a reasonable one. The test is not whether the inference drawn is the only reasonable inference. The test is whether the inference drawn is a reasonable one." *Id.* The court rejected the defendant's argument that such an inference could not be made without an explicit statement in the affidavit that linked the illegal drugs to the defendant's residence. *Id.*, ¶31.

¶16 The affidavit here, in some respects resembling the affidavit in *Ward*, contained sufficient facts to support a reasonable inference that drug-crime evidence would be found in Pemberton's residence and therefore to support probable cause to issue a search warrant. *See id.*, ¶27. The allegations here involved two different drug transactions connected to residents—Joey Bayne and Pemberton—who allegedly resided at the same address: N5391 State Road 80, New Lisbon. CI 16-032 told police that he knew Pemberton to deal drugs from his Chevrolet Cruze and that Pemberton would "only have a specific amount of marijuana on his person while a sale was being done and he would have to leave to obtain more drugs for another sale." Additionally, the police dog alerted to the odor of illegal drugs at William Pemberton's locker, and the affidavit indicated that William Pemberton also resided at N5391 State Road 80, New Lisbon.

¶17 "The well-established test for probable cause is that it is 'flexible,' and is 'a practical commonsense decision,' that is made considering 'the totality of the circumstances.'" *State v. Silverstein*, 2017 WI App 64, ¶22, 378 Wis. 2d 42, 902 N.W.2d 550 (quoted sources omitted). While Pemberton challenges the reliability of individual pieces of information, "[p]rove-up of every detail is not required in a warrant affidavit, as is consistent with the policy that is designed to encourage law enforcement to obtain search warrants in the first place." *See id.* Thus, we do not "focus on individual parts" of a supporting affidavit to determine

whether it established probable cause. *State v. Schaefer*, 2003 WI App 164, ¶17, 266 Wis. 2d 719, 668 N.W.2d 760. Rather, we assess the "statements viewed in their entirety, and the reasonable inferences that may be drawn from those facts." *Id.*

¶18 Here, a reasonable inference from all of the information in the search warrant affidavit was that Pemberton was a regular drug dealer who kept the drugs that he was selling somewhere other than his car, and one obvious potential location would be his residence. We conclude that the facts as a whole, and the reasonable inferences that may be drawn from those facts, stated probable cause to believe that evidence of a crime would be found at the Pemberton residence.[2]

### B.     Denial Of Postconviction Motion Based On Newly Discovered Evidence.

¶19 We turn to Pemberton's postconviction motion based on newly discovered evidence related to the dog sniff at New Lisbon school. As we now explain, the circuit court reasonably determined that the entire theory of this motion fell apart at an evidentiary hearing.

¶20 In his motion, Pemberton asserted that he had an investigator speak with two principals at the school. The first, Gary Syftestad, said that he recalled that Officer Walker came to the school with the police dog around December 6, 2016 (the date reported in the search warrant affidavit). Syftestad said that he accompanied Officer Walker to a set of high school lockers for the dog sniff. Syftestad said that he could not remember the name of the student at issue but did

---

[2] In light of this determination, we need not address the good-faith exception to the exclusionary rule, which Pemberton references.

not think that it was William Pemberton (whose locker was in the junior high). According to Syftestad, there was "no hit," so no locker search occurred. Syftestad said that if there had been a positive hit, "he would not have walked away and done nothing." Syftestad said that there was no documentation of this dog sniff "because nothing had happened."

¶21 Pemberton additionally alleged in his postconviction motion that his investigator spoke with a second principal, Mark Toelle, after learning that Officer Walker spoke with Toelle on the day of the dog sniff at issue. Toelle "could not remember for sure if there had been a sniff on December 6, 2016[,] or a sniff in that time period involving [William] Pemberton." He said that if he authorizes a search, "he will typically be present for the search." Toelle said that "there is never a dog sniff done without an administrator being present." According to Toelle, if there is a positive hit on the locker, the locker is searched.

¶22 Pemberton attached to his postconviction motion a copy of the School District of New Lisbon's Bylaws and Policies. That document states that when a dog sniff is performed, the principal "shall be responsible for the prompt recording in writing of each student search[.]"

¶23 Pemberton's postconviction motion also included correspondence indicating that the School District of New Lisbon had no documentation regarding "any soft lock down and the use of the police department and its drug sniffing dog in any of [its] schools from approximately November 22, 2016[,] through December 20, 2016."

¶24 In light of this information, Pemberton argued that "the evidence of the alleged dog sniff" was unreliable. Alternatively, Pemberton asserted that, if

9

the circuit court concluded he was negligent for not discovering this information earlier, it was because he received ineffective assistance of trial counsel.

¶25 During the evidentiary hearing on this motion in the circuit court, Officer Walker testified that he took the dog to the school on December 6, 2016, to conduct a dog sniff of William Pemberton's locker. Even though Officer Walker believed that he was legally justified in performing the search without authorization from any school employee, as a courtesy he informed Principal Toelle. Principal Toelle was not present for the search. During the search, the dog alerted to the odor of an illegal drug outside William's locker.

¶26 Dennis Birr, the superintendent of the School District of New Lisbon, also testified at the evidentiary hearing. Birr explained that the School District's Bylaws and Policies govern situations in which *the school initiates* the search. In contrast, Birr testified, when *police initiate* a search officers are not bound by the school's Bylaws and Policies. Birr testified that if an administrator is available for a police-initiated search, that person might accompany the officer, but "[o]therwise we allow the officer to go ahead and search." Asked whether the locker would be searched after a positive alert in that scenario, Birr testified, "That's totally up to the officer." Birr further testified that it was also the officer's call whether to inform the school of the results of the search.

¶27 Pemberton called Principal Syftestad, who testified that in early December 2016 he was present for a dog sniff that Officer Walker conducted at the school. Syftestad testified that William Pemberton was not the subject of that search.

¶28 Principal Toelle testified that he recalled that Officer Walker wanted to search William Pemberton's locker. Toelle said that he was not present when

10

that search occurred. When asked why he told the defense investigator that, if he had given permission for a drug dog sniff he would have been present for the search, Toelle explained that he incorrectly thought that the investigator was inquiring about a school-wide search. He testified: "If we were doing a school[-]wide drug dog search, [there] would be an administrator along. This was—[Officer Walker] simply wanted to do a walk-by and, I'll just say, quick search of the locker."

¶29 Pemberton's investigator testified that Toelle told her that "there's never a dog sniff done without an administrator being present," that there would have been documentation of the dog sniff, and "[i]f there's no documentation, it didn't happen." She testified that she did not ask Toelle about the difference between a school-initiated search and a police-initiated search because Toelle did not draw that distinction.

¶30 We turn to the applicable standards. "'After sentencing, a defendant who seeks to withdraw a guilty or no contest plea carries the heavy burden of establishing, by clear and convincing evidence, that withdrawal of the plea is necessary to correct a manifest injustice.'" *State v. Ferguson*, 2014 WI App 48, ¶24, 354 Wis. 2d 253, 847 N.W.2d 900 (quoted source and brackets omitted).

> For newly discovered evidence to constitute a manifest injustice and warrant the withdrawal of a plea the following criteria must be met. First, the defendant must prove, by clear and convincing evidence, that: (1) the evidence was discovered after conviction; (2) the defendant was not negligent in seeking evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative. If the defendant proves these four criteria by clear and convincing evidence, the circuit court must determine whether a reasonable probability exists that a different result would be reached in a trial.

*Id.* (citation omitted).

¶31 We review the circuit court's decisions on the first four prongs for erroneous exercises of discretion. *See State v. Vollbrecht*, 2012 WI App 90, ¶18, 344 Wis. 2d 69, 820 N.W.2d 443. However, the fifth prong, *i.e.*, whether a reasonable probability exists that a different result would be reached in a trial, presents an issue of law. *See id.*

¶32 We agree with the State that Pemberton has not satisfied at least two of the required factors: he does not have material evidence and he has not shown a reasonable probability of a different outcome.

¶33 The evidence presented at the hearing was not material. Instead of showing that the dog sniff of William Pemberton's locker was unreliable, the evidence at the hearing provided cumulative support for the State's case. Insofar as Pemberton was arguing that the dog sniff did not occur, the circuit court found such an argument was "specious" in light of the evidence that was presented at the hearing. The circuit court additionally found that the new evidence from the three school administrators and the investigator "only corroborated what Chief Walker said about the dog sniff and it corroborated that the dog sniff happened." Addressing the investigator's testimony, the circuit court found the following: "Once she heard, oh, all these searches have all kinds of documentation and that sort of thing, she just stopped looking and never looked into the question of what happens when the police call and ask for a search."

¶34 We conclude that the circuit court properly exercised its discretion when it concluded that the newly discovered evidence was not material. *See State v. Edmunds*, 2008 WI App 33, ¶8, 308 Wis. 2d 374, 746 N.W.2d 590 ("A court properly exercises its discretion if it relies on the relevant facts in the record and applies the proper legal standard to reach a reasonable decision."). Given the lack

of materiality, we further conclude that Pemberton has not shown a reasonable probability that a different result would be reached in a trial. Pemberton's circumstances would have been the same if he had discovered the evidence before he entered his plea.

¶35    It appears that Pemberton alternatively argues that trial counsel provided him with ineffective assistance in failing to do more to seek out the information he contends was newly discovered. But for the reasons explained above, it would not have mattered if counsel had in fact discovered and set forth this information because it is not material to Pemberton's case. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984) (demonstrating prejudice for purposes of ineffective assistance of counsel requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").[3]

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2019-20).

---

[3] Pemberton's briefs are difficult to follow. Given his pro se status, we have made every attempt to address his thinly developed arguments. However, to the extent that he intends to raise arguments beyond those we address, we do not discuss them because they are undeveloped. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).