MICHAEL J. GABLEMAN, J.
¶ 1. This is a review of an unpublished decision of the court of appeals[1] affirming a decision and order of the Milwaukee County Circuit Court[2] denying defendant Jacqueline R. Robinson's (Robinson) post-conviction motion to reinstate her original sentence.
¶ 2. The question before us is whether Robinson's constitutional protection against double jeopardy was violated when the circuit court increased her sentence one day after initially imposing it. Robinson argues that the circuit court's decision to resentence her one day *354 after her original sentence was imposed violated both state and federal constitutional protections against double jeopardy because she had a legitimate expectation of finality in her original sentence.[3] The State contends that Robinson had no legitimate expectation of finality and, consequently, Robinson's constitutional protection against double jeopardy was not violated.
¶ 3. Under the reasoning of United States v. DiFrancesco, 449 U.S. 117, 101 S. Ct. 426, 66 L. Ed. 2d 328 (1980) and the factors set forth in State v. Jones, 2002 WI App 208, 257 Wis. 2d 163, 650 N.W.2d 844, we hold Robinson did not have a legitimate expectation of finality and the circuit court acted appropriately in resentencing Robinson. Accordingly, we affirm the court of appeals.
I. BACKGROUND AND PROCEDURAL HISTORY
¶ 4. The facts relevant to this appeal are undisputed. On January 19, 2011, Robinson was arrested for operating a motor vehicle while her driving privileges were suspended, for loitering, and for violation of probation. Robinson was taken to the police station for processing. At the police station, a police officer conducted a search of Robinson and recovered a pill bottle containing Alprazolam pills.[4] Due to suspicion Robinson might be hiding additional narcotics, Robinson was escorted to a bathroom and two police officers con *355 ducted a further search of Robinson's person. During this search, the police officers recovered a second pill bottle containing Oxycontin pills.[5] At this point, a struggle ensued. Robinson struck one of the police officers on the officer's jaw and forehead, and kicked the second police officer twice on the officer's left knee.
¶ 5. On January 22, 2011, the State filed a criminal complaint charging Robinson with one count of possession of narcotic drugs, in violation of Wis. Stat. § 961.41(3g)(am)(2009-10)[6] (Count One), and two counts of battery to a law enforcement officer, in violation of Wis. Stat. § 940.20(2) (Count Two and Count Three).
¶ 6. On April 12, 2011, Robinson and the State entered into a plea agreement. Pursuant to the plea agreement, Robinson pled guilty to all three counts.
¶ 7. Robinson's arrest on January 19, 2011, was not her first encounter with the law. At the time of her arrest, Robinson was on probation after pleading guilty to three criminal charges in Waukesha County in 2008.[7] Those three criminal charges were comprised of two counts of receiving stolen property less than or equal to $2,500, in violation of Wis. Stat. § 943.34(l)(a) (Waukesha County cases 08-CM-2563 and 08-CM-1636) and one count of possession with intent to deliver narcotics, in violation of Wis. Stat. § 961.41(lm)(a) (Waukesha County case 08-CF-518). Sentence on the Waukesha County cases was withheld and Robinson was placed on *356 three years of probation. No jail time was ordered as a condition of that probation.
¶ 8. As a result of her arrest in Milwaukee County on January 19, 2011, Robinson was revoked from probation on all three Waukesha County cases. On April 6, 2011, the Waukesha County Circuit Court, the Honorable William J. Domina, presiding, sentenced Robinson to two years initial confinement and four years extended supervision for case 08-CF-518. For Waukesha County cases 08-CM-2563 and 08-CM-1636, Robinson was sentenced to nine months initial confinement for each count, with each sentence to run concurrent with the sentence imposed for case 08-CF-518. In sum, the circuit court sentenced Robinson to two years of initial confinement and four years of probation as a consequence of the revocation of her probation (collectively, "Waukesha County sentences").
¶ 9. On May 10, 2011, the Milwaukee County Circuit Court, the Honorable Judge Van Grunsven, presiding, held a sentencing hearing for Robinson for Counts One, Two, and Three. The hearing began with the State and Robinson making a joint recommendation that any sentence the circuit court imposed be concurrent with the Waukesha County sentences. The State recited Robinson's prior criminal record and the factual background that led to Robinson's most recent charges. The State explained that, in 2008, eleven charges had previously been dismissed and read-in for three other convictions in Waukesha County and Robinson had received only probation for those three offenses. The State further explained that Robinson's probation had been revoked and she had been sentenced to "two years in custody and four years extended supervision." The State recommended that the circuit court not impose *357 any additional incarceration time for Robinson's most recent plea agreement for Counts One, Two, and Three.
¶ 10. Prior to imposing sentence on those counts, Judge Van Grunsven noted that "much of what [he] read in the complaint [was] absolutely despicable behavior." At one point during the sentencing hearing, he addressed the defendant directly:
Quite frankly, in relation to your character, this Court considers the litany of cases that were dismissed and read-in as part of the plea negotiations out in Waukesha and while everyone seems to say that Jacqueline has turned the corner, I think the history and violation of laws of the state give me great cause for concern, despite the fact she's been off of probation she's been revoked and I also see her as a threat to society.
She is continuing to commit crimes, despite the fact she has pending charges, leading to the bail jump charge and other cases and I just, while she indicates that she's now clean and sober and going to take the opportunities seriously, I'm not so certain.
I think she has a vicious addiction that is going to be a life-long struggle. I consider the fact Judge Domina ordered a sentence of two years in and four years out after she was revoked and returned to him for sentencing. I do need to consider that.
I also look at the fact she has pled guilty, accepted responsibility. I also look at the need to protect the public.
¶ 11. After his remarks, Judge Van Grunsven sentenced Robinson on Count One to 42 months in the Wisconsin State Prison System, consisting of 18 months initial confinement and 24 months extended supervision, concurrent with any other sentence. On Counts Two and Three, Judge Van Grunsven sentenced Robinson to 60 *358 months in the Wisconsin State Prison System, consisting of 24 months initial confinement and 36 months extended supervision, concurrent with any other sentence. Because Judge Van Grunsven ordered that the sentences run concurrent with the Waukesha County sentences, Robinson effectively received no additional incarceration after being sentenced on Counts One, Two, and Three.
¶ 12. The next day, May 11, 2011, the circuit court sua sponte recalled the case. Judge Van Grunsven stated that after the hearing, he did some research on the Consolidated Court Automation Programs (CCAP) and realized he made a mistake.[8] Specifically, the court remarked that it mistakenly believed the Waukesha County sentences Robinson was currently serving amounted to two years and nine months initial incarceration, when in fact she had only been sentenced to two years. Judge Van Grunsven explained:
At the conclusion of the hearing and. subsequent thereto the Court did some research and I realized I made a mistake. The split sentence I proposed yesterday did not reflect this Court's intent as far as a fair sentence in this case.
There was a lengthy record with regard to a number of cases in Waukesha County and I mis-heard and misnoted some of the sentences that were handed down. Specifically 08CM1636, in which the Receiving Stolen Property case, Ms. Robinson was given nine months. It *359 was my mistaken impression that she said the nine months was consecutive and tacked on to the 24 months that Judge Domina ordered in that case. Quite frankly a review of CCAP subsequent to yesterday's hearing revealed that in fact the nine months in that case was concurrent to 08CF518 and 08CM2563.
In fashioning a sentence in this case, the Court does look at the gravity of the offense, the defendant's character and need to protect the public and yesterday I started my sentencing arguments by talking about how despicable the behavior was by Ms. Robinson in this case in terms of her reactions and interactions with the police officers in this case.
In fashioning a sentence the Court does need to look at probation and probation is not appropriate. The court considers prior record of convictions and the court does look at a period of incarceration and believes it is necessary to accomplish the objectives of good sentencing, which is the gravity of the offense, the defendant's character and need to protect the public.
Given all of that and harkening back to the comments made yesterday, I asked this case be called back so I can re-state and announce the sentence I wanted to achieve yesterday....
¶ 13. Judge Van Grunsven then modified Robinson's sentences for Counts Two and Three. For both Counts Two and Three, Judge Van Grunsven increased Robinson's sentence from 60 months, consisting of 24 months initial confinement and 36 months extended supervision, to 69 months, consisting of 33 months initial confinement and 36 months extended supervision, to run concurrently with any other sentence. The effect of Judge Van Grunsven's modification of Robinson's sentences for Counts Two and Three was a nine-month increase in Robinson's time of incarceration.
*360 ¶ 14. On November 14, 2011, Robinson filed a postconviction motion seeking restoration of the sentence imposed on May 10, 2011. Robinson's postconviction motion asserted that the circuit court violated both her state and federal constitutional protections against double jeopardy when it resentenced her on May 11, 2011. In her postconviction motion, Robinson noted that the May 10, 2011, sentence was neither illegal nor incorrect and the record clearly established the court understood Robinson's existing sentences. Instead, Robinson argued the circuit court "increased the sentence based upon mere second guessing of its original decision" and therefore violated Robinson's right to be free from double jeopardy.
¶ 15. The circuit court denied the postconviction motion, finding no violation of the double jeopardy clause. Relying on State v. Burt, 2000 WI App 126, 237 Wis. 2d 610, 614 N.W.2d 42, the circuit court found that it had "not increase[d] defendant Robinson's sentence upon reflection but instead because the court was under a mistaken impression about her Waukesha County sentence."
¶ 16. The court of appeals issued a per curiam decision affirming the circuit court, holding the circuit court did not violate Robinson's double jeopardy protection when it increased her sentence. The court of appeals recognized that "[a] sentencing court violates double jeopardy when it increases a previously imposed sentence if the defendant had a legitimate expectation of finality in the original sentence." Robinson, No. 2011AP2833-CR, unpublished slip op., ¶ 3. The court of appeals noted that in Burt the court had held the sentencing court did not violate an individual's right to be free from double jeopardy when it changed a sentence later the same day in order to correct a " 'slip of *361 the tongue.'" Id. at ¶ 5 (quoting Burt, 237 Wis. 2d 610, ¶ 12). In comparing the facts of Burt to the facts of Robinson's case, the court of appeals noted that "Robinson served only one day of her sentence when the circuit court realized its mistake . . . and recalled Robinson to increase her sentence." Id. The court of appeals reasoned that "[t]he difference in time between the circuit court's action in Burt and the circuit court's action here is a matter of hours, not days." Id. at ¶ 11. The court of appeals acknowledged that "Robinson's expectation in the finality of her sentence was not illegitimate," but concluded "the sentence did not yet have a degree of finality that prohibited the circuit court from correcting its own mistake the day after the initial sentencing." Id.
¶ 17. Robinson petitioned this court for review of the decision of the court of appeals. We accepted the petition on February 12, 2013.
II. STANDARD OF REVIEW
¶ 18. The sole issue in this case is whether Robinson's protection against double jeopardy was violated by the circuit court's decision to increase Robinson's sentence the day after her original sentence was imposed. "Whether an individual's constitutional right to be free from double jeopardy has been violated is a question of law that this court reviews de novo." State v. Anderson, 219 Wis. 2d 739, 746, 580 N.W.2d 329 (1998).
III. DISCUSSION
¶ 19. The question before us is whether Robinson's constitutional protection against double *362 jeopardy was violated when the circuit court increased her sentence one day after initially imposing it. Robinson argues that the circuit court's decision to resentence her one day after her original sentence was imposed violated her state and federal constitutional protections against double jeopardy because she had a legitimate expectation of finality in her original sentence. The State contends that Robinson had no legitimate expectation of finality and, consequently, Robinson's constitutional protection against double jeopardy was not violated.
¶ 20. In order to fully understand the arguments put forth by the parties, we briefly review the case law upon which their arguments are based.
¶ 21. The Fifth Amendment to the United States Constitution protects an individual from being twice put in jeopardy for the same offense. The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution states, "[N]or shall any person be subject to the same offence to be twice put in jeopardy of life or limb." In Benton v. Maryland, 395 U.S. 784, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969), this guarantee against double jeopardy was held enforceable against the states through the Fourteenth Amendment. The Wisconsin Constitution also guarantees protection from double jeopardy. Article I, § 8(1) states, in relevant part, "[N]o person for the same offense may be put twice in jeopardy of punishment. . . ." Because the protections afforded by these provisions are coextensive, Wisconsin courts have traditionally treated them as one. State v. Gruetzmacher, 2004 WI 55, ¶ 21, 271 Wis. 2d 585, 679 N.W.2d 533.
¶ 22. The guarantee against double jeopardy encompasses three separate constitutional protections. North Carolina v. Pearce, 395 U.S. 711, 717, 89 S. Ct. *363 2072, 23 L. Ed. 2d 656 (1969). "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." Id. The prohibition at issue in this case concerns an individual's protection against multiple punishments.
¶ 23. In DiFrancesco, 449 U.S. 117, the United States Supreme Court held that the appropriate inquiry under the third of these constitutional protections is whether the defendant has a legitimate expectation of finality in her sentence. If a defendant has a legitimate expectation of finality in her sentence, then an increase in that sentence violates double jeopardy. Id. at 437-38; see also Jones v. Thomas, 491 U.S. 376, 394, 109 S. Ct. 2522, 105 L. Ed. 2d 322 (1989) (Scalia, J., dissenting) ("It is clear from DiFrancesco .. . that when a sentence is increased in a second proceeding, the application of the double jeopardy clause turns on the extent and legitimacy of a defendant's expectation of finality in that sentence. If a defendant has a legitimate expectation of finality, then an increase in that sentence is prohibited.")
¶ 24. The Supreme Court in DiFrancesco elaborated on the underlying rationale of the Double Jeopardy Clause:
The constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense.. .. The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to *364 embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.
DiFrancesco, 449 U.S. at 127-28 (quoting Green v. United States, 355 U.S. 184, 187-88, 78 S. Ct. 221, 2 L. Ed. 2d 199 (1957)).
¶ 25. The Court noted that, while these considerations are rational with regard to reprosecution after acquittal, they do not have "significant application to the . .. review [of] a sentence." Id. at 136. The Court in DiFrancesco concluded that sentences and acquittals are very different for double jeopardy purposes. While the Double Jeopardy Clause renders an acquittal final and unreviewable, the same does not hold true for sentences. "[A] sentence does not have the qualities of constitutional finality that attend an acquittal." Id. at 134. Consequently, "the Double Jeopardy Clause does not provide the defendant with the right to know at any specific moment in time what the exact limit of his punishment will turn out to be." Id. at 137.
¶ 26. As this court observed in Gruetzmacher, the "issuance of the United States Supreme Court's decision in DiFrancesco changed the landscape of double jeopardy law" in sentencing cases. Gruetzmacher, 271 Wis. 2d 585, ¶ 30. "After DiFrancesco dismissed the notion that there was a per se rule against modifying a sentence, the idea that modification to increase sentences already being served ran afoul of the double jeopardy clause was no longer sound." Id. Under DiFrancesco's interpretation of the Double Jeopardy Clause of the Fifth Amendment, it is unquestionably permissible, in certain contexts, to review and modify a *365 defendant's sentence after the defendant has already-begun serving the originally-imposed sentence.
¶ 27. Following DiFrancesco, several cases in Wisconsin have considered whether sentence modifications violated a defendant's protection against double jeopardy due to the defendant's legitimate expectation of finality in her sentence.
¶ 28. In Burt, the court of appeals applied the rationale set forth in DiFrancesco in a case where the circuit court misspoke during sentencing and sentenced the defendant to concurrent sentences rather than consecutive. The circuit court became aware of the mistake when it sentenced Burt's co-conspirator immediately after sentencing Burt. The circuit court called Burt back into the courtroom the same day and modified the sentence. The court of appeals held that "the protections against double jeopardy were not violated when the trial court realized it made an error of speech in pronouncing Burt's sentence and took immediate steps to correct the sentence before the judgment of conviction was entered into the record." Burt, 237 Wis. 2d 610, ¶ 11. The court of appeals reasoned that "Burt had already been convicted and was not faced with the embarrassment, expense, and ordeal or continued state of anxiety and insecurity caused by repeated attempts to convict him." Id. (internal quotation marks omitted). The court of appeals concluded that, where the circuit court was simply correcting an error in speech in the pronouncement of the sentence later in the same day the original sentence was imposed, the defendant's interest in finality "is not a significant concern." Id. at ¶ 12.
¶ 29. In State v. Willet, 2000 WI App 212, 238 Wis. 2d 621, 618 N.W.2d 881, the court of appeals examined the same question that was presented in *366 Burt — that is, whether the defendant had a legitimate expectation of finality in his original sentence — and concluded that the circuit court erred in modifying its original sentence after the defendant had already begun serving it. The circuit court in Willet initially determined that the defendant's sentences for three convictions could not, under the law, be served consecutively to a sentence that the defendant was to receive four days later when his probation was revoked. Willet, 2000 WI App 212, ¶ 2. Four months later, the circuit court concluded that the defendant's initial sentence was based on an erroneous understanding of the law and modified the three sentences so that they were consecutive to the later sentence. Id. at ¶ 1. The court of appeals reversed the circuit court, concluding the defendant had a legitimate expectation of finality under the circumstances. Id.
¶ 30. The court of appeals in Willet reasoned that, unlike the defendant in Burt, "who was resentenced on the same day, Willet had already been serving his sentence for four months when the trial court changed it from concurrent to consecutive." Id. at ¶ 6. Also, the court of appeals emphasized the fact that, unlike Burt, this was clearly not a "slip of the tongue" by the circuit court. Id. Instead, the circuit court misunderstood the law, and, four months later, attempted to "seek a stiffer sentence for Willet." Id. The court of appeals concluded that Willet had a legitimate expectation of finality in the sentence, and that "[t]he double jeopardy clause prevents the trial court from going back, four months later, to redo the sentence." Id.
¶ 31. In State v. Jones, 2002 WI App 208, the court of appeals, in light of DiFrancesco, provided a framework for analyzing whether a defendant's right to be free from double jeopardy has been violated when he *367 is resentenced after an original sentence has already been imposed. Jones distilled two principles from DiFrancesco concerning the issue of whether a court may increase a sentence after the defendant has begun serving the sentence. First, a per se rule no longer exists prohibiting a court from increasing a defendant's sentence after the defendant has begun to serve the sentence. Jones, 2002 WI App 208, ¶ 9. Second, " '[i]f a defendant has a legitimate expectation of finality [in the sentence], then an increase in that sentence is prohibited by the double jeopardy clause.'" Id. (quoting United States v. Fogel, 829 F.2d 77, 87 (D.C. Cir. 1987)). The corollary to that second principle, however, is that "if a circumstance exists to undermine the legitimacy of that expectation, then a court may permissibly increase the sentence." Id.
¶ 32. The court of appeals in Jones further noted that Wisconsin precedent has long recognized that "the application of the double jeopardy clause to an increase in a sentence turns on the extent and legitimacy of a defendant's expectation of finality in the sentence." Id. at ¶ 10. The court of appeals then concluded that whether a defendant has a legitimate expectation of finality is "the analytical touchstone of double jeopardy . . . , which may be influenced by many factors, such as the completion of the sentence, the passage of time, the pendency of an appeal, or the defendant's misconduct in obtaining sentence." Id.
¶ 33. In Gruetzmacher, this court applied the non-exhaustive list of factors set forth in Jones to determine whether the circuit court erred in modifying the defendant's sentence two weeks after it was initially imposed. In Gruetzmacher, the circuit court originally sentenced the defendant to 40 months initial confine *368 ment for a substantial battery charge. Gruetzmacher, 2004 WI 55, ¶ 7. During the initial sentencing hearing, the circuit court indicated that 40 months incarceration was the minimum period the court believed was appropriate as a consequence of the defendant's actions. Id. at ¶ 10. Later the same day, the circuit court realized that the substantial battery charge was a Class E felony that carried a maximum initial confinement of 24 months. Id. at ¶ 8. Realizing that the 40-month sentence exceeded the maximum amount that could be imposed for the offense, the circuit court attempted to contact the parties to schedule another hearing. Id. The parties were unable to reconvene until two days later. Id. When the parties reconvened, the circuit court explained the error to the parties and scheduled a new sentencing hearing for two weeks later. Id. At the new sentencing hearing, the circuit court modified Gruetzmacher's sentence so that he was serving 24 months initial confinement on the substantial battery charge. Id. at ¶ 11. Additionally, the circuit court modified another sentence Gruetzmacher was to serve for bail jumping from 12 years of probation to 40 months initial confinement, all to run concurrent with the substantial battery charge. Id. In effect, the resentencing did not increase the amount of incarceration time originally imposed, but shifted the 40-month sentence from the substantial battery charge to the bail jumping charge.
¶ 34. In Gruetzmacher, this court noted that the factors set forth in Jones illustrate "there is no immutable rule prohibiting sentence increases once a defendant has begun to serve the sentence. Instead, the Jones factors must be evaluated in light of the circumstances in each particular case." Id. at ¶ 34. We then observed that the record indicated the circuit court clearly stated that 40 months was the appropriate *369 sentence for Gruetzmacher considering his lengthy-prior criminal record and violent conduct, and concluded the circuit court acted appropriately. Id. at ¶ 37. We stressed that the circuit court discovered the error in sentencing on the same day and the parties reconvened two days later to address the matter. Id. at 38. Additionally, the circuit court took steps to keep Gruetzmacher from entering the prison system until the sentencing error was corrected, and "[t]he fact that the justice system as a whole had not yet begun to act upon the circuit court's sentence is an important fact that bears emphasis." Id. Moreover, this court reasoned that Gruetzmacher "was not a case where, upon mere reflection, the circuit court decided to increase . . . [the defendant's] sentence." Id. Accordingly, we concluded "Gruetzmacher did not have a legitimate expectation of finality" and that the circuit court acted appropriately in resentencing him. Id.
¶ 35. The State argues that Gruetzmacher and Burt are analogous to the facts of the present case. The State contends that, like Gruetzmacher and Burt, there was a very limited passage of time between when the circuit court erred in imposing the original sentence and when it recalled the case. Further, the State argues that in Burt, the circuit court misspoke when it imposed the original sentence, stating the defendant would serve "concurrent" sentences when the circuit court intended to say "consecutive" sentences. Similarly, the State argues that in the instant case the circuit court misspoke when it first sentenced Robinson due to misunderstanding the nature of how the new sentences would interact with Robinson's prior criminal record.
¶ 36. Robinson disagrees with the State's reading of Burt and Gruetzmacher and argues both cases are easily distinguishable from the present case. Robinson *370 points out that, in Burt, the circuit court's intention to impose consecutive, rather than concurrent, sentences was clear from the circuit court judge's notes, which were sealed into the record. Here, Robinson argues, nothing in the record suggests the circuit court misunderstood the nature of the sentences being imposed at the time of the original sentencing hearing.
¶ 37. With regard to Gruetzmacher, Robinson contends that the present case is distinguishable because the circuit court did not misunderstand the law when it imposed the original sentence. In Gruetzmacher, the circuit court changed what was an illegal sentence because the court initially exceeded the maximum allowable sentence. Robinson argues that, unlike Gruetzmacher, Robinson's original sentence was legally imposed and nothing in the record suggests the circuit court intended to impose a sentence different from the original sentence. Robinson further argues that the present case is more properly compared to Willet than it is to Burt or Gruetzmacher.
¶ 38. We agree with the State's argument that this case is analogous to Burt and Gruetzmacher and distinguishable from Willet. As detailed above, the court of appeals in Jones set forth a list of factors, which were adopted and applied by this court in Gruetzmacher, that are relevant to whether a defendant has a legitimate expectation of finality in his or her sentence.[9] *371 Here, two Jones factors are particularly germane: (1) the completion of the sentence and (2) the passage of time between the original sentence and resentencing. In Burt, the circuit court modified the defendant's sentence on the same day the original sentence was imposed. In Gruetzmacher, the circuit court realized its error on the same day the original sentence was imposed, notified the parties the same day, and scheduled a hearing to resentence the defendant two days later. Here, Judge Van Grunsven realized hours after sentencing Robinson that he had misunderstood the Waukesha County sentences and, because of that misunderstanding, erred in imposing the original sentence. Consequently, in order to rectify this mistake, Judge Van Grunsven recalled and resentenced Robinson the following day. Like Burt and Gruetzmacher, little time passed between the original imposition of Robinson's sentence and her resentencing. Willet is easily distinguishable from this line of cases, in that a four-month gap existed between the original sentencing of the defendant and the circuit court's attempt to recall the defendant and impose a greater sentence.
¶ 39. Additionally, in Gruetzmacher, we emphasized a significant factor in determining that the circuit court acted appropriately in resentencing the defendant was that "the justice system as a whole had not yet begun to act upon the circuit court's sentence." Gruetzmacher, 271 Wis. 2d 585, ¶ 38. Upon review of the record, we conclude the same holds true in the present case. The circuit court notified the parties it had made a mistake regarding Robinson's original sen *372 tence and corrected the sentence one day later, before any judgment of conviction had been entered. In fact, no judgment of conviction was ever produced reflecting the originally-imposed sentence. See Gruetzmacher, 2004 WI 55, ¶ 38; Burt, 2000 WI App 126, ¶ 11 (holding "the protections against double jeopardy were not violated when the trial court realized it made an error of speech in pronouncing Burt's sentence and took immediate steps to correct the sentence before the judgment of conviction was entered into the record").
¶ 40. Robinson raises a number of arguments in an attempt to distinguish the present case from Gruetzmacher and Burt. The essence of Robinson's arguments, however, focuses on the same point: Robinson contends that nothing in the record supports the circuit court's explanation for modifying Robinson's sentence. According to Robinson, the sentence the circuit court originally imposed was lawful and no misunderstanding of fact is evident from the record. Robinson stresses that in the cases on which the State relies, there is clear evidence in the record corroborating the justifications provided by the circuit courts for resentencing. See Burt, 2000 WI App 126, ¶ 18 (noting the judge's intention to impose consecutive, rather than concurrent, sentences was supported by his notes); Gruetzmacher (noting that the judge's original intention to impose a sentence of 40 months was clear from the transcript of the original sentencing hearing). Here, Robinson argues, no such evidence exists in the record.
¶ 41. This is problematic, Robinson contends, because with nothing in the record to corroborate a judge's explanation for resentencing a defendant after a lawful sentence has been imposed, a judge will be free to deliberate on any previously imposed sentence and sua *373 sponte modify it without any constitutional safeguard available for the defendant.
¶ 42. Cases that examine double jeopardy claims in the context of sentencing present a difficult balancing act for appellate courts. On the one hand, it is unacceptable for the defendant's sentence to be seen as a work in progress that a circuit court can add to or subtract from at will. This result would clearly conflict with the underlying rationale of the Double Jeopardy Clause; that is, to prevent the State from effectively "mak[ing] repeated attempts to convict an individual for an alleged offense . . . and compelling him to live in a continuing state of anxiety and insecurity." DiFrancesco, 449 U.S. at 127-28 (quoting Green, 355 U.S. 184, 187-88). On the other hand, a circuit court should not be tethered in every instance to a sentence that is based on a mistake of law, mistake of fact, or inconsistent with the court's intent. "The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner." DiFrancesco, 449 U.S. at 135 (quoting Bozza v. United States, 330 U.S. 160, 166-67, 67 S. Ct. 645, 91 L. Ed. 818 (1947)).
¶ 43. Accordingly, we reaffirm today the approach set forth in Jones and adopted by this court in Gruetzmacher as the appropriate framework for determining whether a defendant has a legitimate expectation of finality. In cases such as these, a bright line rule is simply unworkable. As we noted in Gruetzmacher, "the Jones factors must be evaluated in light of the circumstances in each case." Id. at ¶ 34. Evaluating the extent and legitimacy of a defendant's expectation of finality is a multi-factor inquiry that rests largely on the facts of each individual case.
*374 ¶ 44. Here, Judge Van Grunsven noticed he had misunderstood Robinson's prior criminal record during the original sentencing hearing on the same day it occurred and scheduled a new sentencing hearing for the following day. This was not a case where the circuit court judge decided, after further deliberating on the initial sentence imposed, that a different sentence length was more appropriate. Here, as Judge Van Grunsven explained on the record, he misunderstood Robinson's lengthy criminal record, failed to sentence Robinson in a way that matched his intention, and acted to remedy the error as expeditiously as possible. We hold that the record supports this explanation, considering the complexity of the defendant's prior criminal history as recited on the record, Judge Van Grunsven's lengthy remarks regarding the "despicable" nature of Robinson's conduct and the need to protect the public, and the promptness with which the sentence was rectified.[10]
¶ 45. We agree with Robinson's observation that the record shows the State and the circuit court correctly described Robinson's prior criminal record and the structure of Robinson's plea agreement before Robinson was sentenced. The record of the original sentencing hearing is replete with references from the State and the circuit court regarding Robinson's prior criminal record and how the sentences for Counts One, Two, and Three would interact with the Waukesha County sentences she was currently serving.
¶ 46. We disagree, however, with Robinson's contention that nothing exists in the record of the original *375 sentencing hearing to support the circuit court's explanation for modifying Robinson's sentence. During Robinson's original sentencing hearing on May 10, 2011, Judge Van Grunsven emphasized his concerns regarding Robinson's conduct repeatedly:
With regard to the gravity of the offense, I will tell you, much of what I read in the complaint is absolutely despicable behavior. Police officers are brought to a scene to help you after a relapse and you start.. . taking swipes at them ...
Quite frankly, in relation to your character, this Court considers the litany of cases that were dismissed and read-in as part of plea negotiations out in Waukesha and while everyone seems to say that Jacqueline has turned the corner, I think the history and violation of laws of the state give me great cause for concern, despite the fact she's been off of probation she's been revoked and I also see her as a threat to society.
She is continuing to commit crimes, despite the fact she has pending charges, leading to the bail jump charge and other cases and I just, while she indicates that she's now clean and sober and going to take the opportunities seriously, I'm not so certain.
¶ 47. After observing that Robinson's conduct was "despicable," and noting that he considered her to be a "threat to society," Judge Van Grunsven sentenced Robinson for Counts One, Two, and Three in a manner that provided no additional time of incarceration beyond the amount that had already been imposed for the Waukesha County sentences. In light of Judge Van Grunsven's observations regarding Robinson's conduct, we find the record supports Judge Van Grunsven's explanation for resentencing Robinson after realizing he misunderstood the nature and length of the Waukesha County sentences.
*376 ¶ 48. Robinson argues that, without more in the record corroborating the circuit court's explanation for modifying Robinson's sentence, we should conclude the circuit court modified the sentence in a way that violated Robinson's right against double jeopardy. We disagree for two reasons. First, as we explained above, there is evidence in the record supporting the circuit court's justification for modifying Robinson's sentence. Second, Robinson's argument essentially says that, without clear and convincing evidence in the record corroborating the circuit court's explanation, a reviewing court should presume that the circuit court, after deliberating on the initial sentence imposed, decided a harsher sentence would be more appropriate than the one originally intended and imposed. In light of the great deference we afford sentencing courts, we decline to create such a presumption. See, e.g., Solem v. Helm, 463 U.S. 277, 290, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983) ("Reviewing courts, of course, should grant substantial deference to the .. . discretion that trial courts possess in sentencing convicted criminals."); State v. Paske, 163 Wis. 2d 52, 70, 471 N.W.2d 55 ("We will review sentencing for abuse of discretion."); 7 Crim. Proc. § 27.5(e)(3d ed.) ("Sentencing decisions in many jurisdictions are subject only to review for abuse of discretion. In some states, sentences are evaluated under an even less exacting 'shock-the-conscience' standard."). We do not, as a matter of course, presume that judges act capriciously without clear evidence supporting their actions. Quite the contrary— taking judges at their word is a fundamental assumption built into our legal system. In the absence of clear evidence to the contrary, we decline to assign improper motive on the part of the circuit court.
*377 ¶ 49. The dissent accuses us of failing to address the reflection doctrine. We agree with the dissent's statement that, in cases concerning a judicial change of a sentence, double jeopardy and reflection are two distinct doctrines. We disagree with the dissent's implicit contention, however, that — regardless of the arguments advanced by the parties — both doctrines must always be addressed. In its attempt to bring this case within the ambit of the reflection doctrine, the dissent mischaracterizes the issue before this court, the arguments raised by the parties, and the impact of our holding.
¶ 50. Robinson petitioned this court to review whether her "state and federal constitutional rights against double jeopardy" were violated by the circuit court's actions. We accepted Robinson's petition on this question and today we answer it. Our analysis relies on the double jeopardy arguments advanced by the parties in order to address the double jeopardy issue raised by the defendant. We do not cite or discuss — just as the parties do not cite or discuss — the numerous cases in our reflection doctrine jurisprudence the dissent comprehensively reviews and suggests we are altering or overruling. Simply put, the dissent wishes to discuss the vitality of a body of law that is beyond the scope of the issue raised in the petition for review. "Typically, appellate courts do not take it upon themselves to create and develop arguments on a party's behalf," State v. Brown, No. 2011AP2907-CR, unpublished order, (Feb. 26, 2014) (Bradley, J. dissenting), and we decline to do so here.
*378 IV CONCLUSION
¶ 51. The circuit court, upon discovering its error in imposing the original sentence for Robinson, promptly notified the parties. Robinson was resentenced on the following day. The judgment of conviction for the original sentence had not yet been entered into the record. Under the reasoning of DiFrancesco and the factors set forth in Jones, we hold Robinson did not have a legitimate expectation of finality and the circuit court acted appropriately in resentencing Robinson. Accordingly, we affirm the court of appeals.
By the Court. — The decision of the court of appeals is affirmed.

 State v. Robinson, No. 2011AP2833-CR, unpublished slip op. (Wis. Ct. App. Oct. 23, 2012).

 The Honorable Paul R. Van Grunsven presiding.

 In United States v. DiFrancesco, 449 U.S. 117, 101 S. Ct. 426, 66 L. Ed. 2d 328 (1980), the United States Supreme Court held that if a defendant has a legitimate expectation in the finality of her sentence, then an increase in that sentence violates double jeopardy.

 Alprazolam is the generic ingredient in Xanax, a prescription anxiety medication, which is a Schedule IV controlled substance. See Wis. Stat. § 961.20(2)(a)(2009-10).

 Oxycontin (Oxycondine) is a Schedule II controlled substance. See Wis. Stat. § 961.16(2)(a)ll (2009-10).

 All subsequent references to the Wisconsin Statutes are to the 2009-10 version unless otherwise indicated.

 As part of the plea agreement for the 2008 charges, eleven charges were dismissed and read-in to a global sentence for the three other criminal convictions.

 The Consolidtaed Court Automation Program (CCAP) is the information technology department within the Wisconsin director of State Courts Office. CCAP created a case management system for the county circuit courts and many records in that system can be accessed by the public through the Wisconsin Circuit Court Access (WCCA) website, via the internet.

 It bears emphasis that the factors listed in Jones are non-exhaustive. See State v. Jones, 2002 WI App 208, ¶ 10, 257 Wis. 2d 163, 650 N.W.2d 844 (emphasis added) (noting that a "defendant's legitimate expectation of finality in the sentence . . . may be influenced by many factors, such as the completion of the sentence, the passage of time, the pendency of an appeal, or the defendant's misconduct in obtaining sentence.") However, regarding the other two factors specifically set *371 forth in Jones, both parties agree that Robinson did not engage in any misconduct in obtaining her original sentence and there was no pendency of an appeal. Accordingly, they do not apply here.

 In addition, no Presentence Investigation Report was produced in this case. Judge Van Grunsven therefore had no written explanation of Robinson's previous sentences.