COURT OF APPEALS
DECISION
DATED AND FILED

January 24, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2022AP325-CR**

STATE OF WISCONSIN

Cir. Ct. No.  2017CF4320

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

      PLAINTIFF-RESPONDENT,

  V.

KEONTA LATREZ MOORE,

      DEFENDANT-APPELLANT.

      APPEAL from a judgment and an order of the circuit court for Milwaukee County:  T. CHRISTOPHER DEE, Judge.  *Affirmed*.

      Before Brash, C.J., Donald, P.J., and Dugan, J.

      **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

      ¶1    PER CURIAM. Keonta Latrez Moore appeals his judgment of conviction for one count of first-degree reckless injury, one count of first-degree

recklessly endangering safety, and possession of a firearm by a felon. He also appeals the order denying his postconviction motion for a new trial. Moore argues that his trial counsel was ineffective for failing to raise a multiplicity objection, based on the recklessly endangering safety offense being a lesser-included crime to reckless injury. He further asserts that counsel was ineffective for failing to object to the jury instructions as being inadequate to protect his right to a unanimous verdict, because they did not specify the alleged acts for each charge against Moore. We reject Moore's claims and affirm.

## BACKGROUND

¶2 The charges against Moore stem from a shooting that occurred in September 2017. According to the criminal complaint, N.J.D. told police that he was walking with his friend, K.R., on North 28th Street in Milwaukee when a gray SUV pulled up next to them. The driver rolled down the window of the vehicle and pointed a gun at them. The driver told K.R. to move, pulled down a half mask he was wearing exposing his face, and said to N.J.D. "You a snitch." The driver then fired at N.J.D. repeatedly, striking him in the hip. N.J.D. identified the shooter as Moore.

¶3 Moore was charged with one count of first-degree reckless injury with the use of a dangerous weapon and one count of first-degree recklessly endangering safety with the use of a dangerous weapon, as well as possession of a firearm by a felon. The victim listed on the complaint for both the reckless injury count and the recklessly endangering safety count was N.J.D.

¶4 The matter proceeded to a jury trial in March 2018. Both K.R. and N.J.D. testified at trial. K.R. explained that he was standing between N.J.D. and Moore when Moore pointed the gun at them. He stated that he froze for a moment

2

before N.J.D. pushed him to get him to run. He then ran up the street to his house. He estimated that there were three to four initial shots, and he heard additional shots being fired after he had run home. K.R. identified Moore as the shooter, explaining that Moore had pulled up to his house after the shooting and told him that it "really don't got nothing to do with you," and that when Moore saw N.J.D. again, he was going to kill him.

¶5      N.J.D. testified that he had known Moore for three or four years; they had been best friends, but Moore blamed him for another person's arrest in a different incident. N.J.D. stated that when Moore shot at him, the first shot hit him in the leg, but he was able to run away by cutting through backyards, eventually hiding between a house and garage. He said that Moore initially fired seven or eight shots, and then fired three additional shots in the air as he was "riding around looking for [N.J.D.]."

¶6      After the close of evidence, the trial court read the instructions to the jury describing the elements of each crime. With regard to the reckless injury count, the court stated that N.J.D. was the victim and in order to convict Moore of that crime, the jury would have to find that he "caused great bodily harm to [N.J.D.]." However, N.J.D. was not named as the victim for the recklessly endangering safety count; rather, the court instructed the jury that it must find that Moore "endangered the safety of *another human being*" in order to convict him of that crime. (Emphasis added.)

¶7      The jury convicted Moore on all charges. The trial court imposed a sentence totaling eighteen years of initial confinement and nine years of extended supervision.

¶8 Moore filed a postconviction motion for a new trial, asserting that because recklessly endangering safety is a lesser-included offense of reckless injury, the charges against him were multiplicitous and his convictions for both of these offenses was thus a double jeopardy violation.[1] Moore argued that his trial counsel was ineffective for failing to raise this issue; in particular, he contended that counsel should have objected to the jury instructions and verdict forms based on the unanimity requirement, arguing that the instructions and verdict are required to state which specific criminal act formed the basis for each guilty verdict. He suggested that this lack of specificity is indicative of the charges being multiplicitous.

¶9 The trial court rejected Moore's arguments. The court found that based on the evidence adduced at trial—that Moore shot multiple times, with one shot hitting N.J.D.—each shot was a separate criminal act. Therefore, the court determined that the charges were not multiplicitous in violation of the double jeopardy clause. Furthermore, the court stated that under these circumstances, the jury did not need to be instructed that it had to reach a unanimous decision regarding which shot injured N.J.D. and which shot endangered "another human being," nor was more specificity required on the verdict forms.

¶10 The trial court therefore found that Moore's trial counsel was not ineffective for failing to raise objections on these issues, and denied Moore's motion without a hearing. This appeal follows.

---

[1] Appointed postconviction counsel for Moore initially filed a no-merit appeal, filing a corresponding report as well as a supplemental report after Moore responded. This court requested a further supplemental report "to address why Moore cannot pursue arguably meritorious postconviction claims regarding double jeopardy, jury unanimity, and ineffective assistance of counsel based on his conviction of both first-degree reckless injury by use of a dangerous weapon and first-degree recklessly endangering safety by use of a dangerous weapon," based on the allegations in the criminal complaint. Counsel then requested the voluntary dismissal of the no-merit appeal, which was granted.

**DISCUSSION**

¶11    On appeal, Moore reasserts his claims of multiplicity and ineffective assistance of counsel.  It is firmly established that an ineffective assistance claim, if sufficiently pled, would require a postconviction evidentiary hearing to be held before the trial court in order "to preserve the testimony of trial counsel."  *See State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979).  However, a defendant is not entitled to a postconviction evidentiary hearing if he or she does not raise sufficient facts to demonstrate that relief is warranted; if the allegations are merely conclusory; or, if the record conclusively demonstrates that the defendant is not entitled to relief.  *State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433.

¶12    To establish a claim of ineffective assistance of counsel, a defendant must demonstrate that his or her lawyer performed deficiently and that deficient performance prejudiced his or her defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A court may reject a claim of ineffective assistance of counsel on either ground.  *Id.* at 697.  Whether counsel's performance was deficient and whether the defendant was prejudiced are questions of law that we review *de novo*.  *State v. Roberson*, 2006 WI 80, ¶24, 292 Wis. 2d 280, 717 N.W.2d 111.

¶13    We first discuss Moore's claim that his convictions were multiplicitous and therefore violated the double jeopardy clause.  The constitutional guarantee against double jeopardy includes protection against "'multiple punishments for the same offense.'"  *State v. Robinson*, 2014 WI 35, ¶22, 354 Wis. 2d 351, 847 N.W.2d 352 (citation omitted).  "Whether an individual's constitutional right to be free from double jeopardy has been violated is a question of law that this court reviews *de novo*."  *Id.*, ¶18 (citation omitted).

¶14    "We employ a two-prong test when analyzing a multiplicity challenge:  (1) whether the charged offenses are identical in law and fact; and (2) whether the legislature intended multiple offenses to be charged as a single count."  *State v. Schaefer*, 2003 WI App 164, ¶44, 266 Wis. 2d 719, 668 N.W.2d 760.  As there was a trial held in this case, we consider all of the evidence elicited at the trial, as opposed to only reviewing the charges as set forth in the criminal complaint.  *See id.*, ¶47.

¶15    The first prong of the multiplicity test "involves a determination of whether the charged acts are 'separated in time or are of a significantly different nature.'"  *State v. Koller*, 2001 WI App 253, ¶31, 248 Wis. 2d 259, 635 N.W.2d 838 (citation omitted).  The analysis of whether the acts are of a different nature "is not limited to an assessment of whether the acts are different types of acts.  Rather, even the same types of acts are different in nature 'if each requires a new volitional departure in the defendant's course of conduct.'"  *Id.* (citations and some quotation marks omitted).  Moreover, the interval between acts can be "merely minutes or even seconds" and still constitute a separate volitional act.  *See Harrell v. State*, 88 Wis. 2d 546, 572, 277 N.W.2d 462 (Ct. App. 1979).

¶16    Additionally, the general rule in considering charges made against a defendant is that there are "as many offenses as individuals affected."  *State v. Rabe*, 96 Wis. 2d 48, 68, 291 N.W.2d 809 (1980).  As such, the fact that K.R. was present when Moore began shooting—somewhere between three and seven shots initially, according to each of their testimony—means there were two individuals affected by this incident, which supports the two counts for which Moore was convicted.  *See id.*  Indeed, this court has previously stated that "[i]ntentionally pointing a loaded gun ready to shoot at another person is conduct imminently dangerous to another."  *State v. Bernal*, 111 Wis. 2d 280, 285, 330 N.W.2d 219 (Ct. App. 1983).

6

¶17 Furthermore, the additional shots fired by Moore when he was looking for N.J.D., as testified to by both N.J.D. and K.R., is a "new volitional departure" from Moore's initial shots. *See **Koller***, 248 Wis. 2d 259, ¶31. Although they occurred shortly after the initial shots by Moore, it can still be considered a separate volitional act within that time frame, *see **Harrell***, 88 Wis. 2d at 572, particularly because it endangered others who may have been in the vicinity, *see **Rabe***, 96 Wis. 2d at 68.

¶18 Therefore, we conclude that the charges against Moore were not identical in fact. When charges against a defendant are different in fact, "we apply the presumption that the legislature intended multiple punishments." ***Schaefer***, 266 Wis. 2d 719, ¶54. That presumption, however, may be rebutted by the defendant by "show[ing] a clear indication of legislative intent to the contrary" in order to satisfy the second prong of the multiplicity test. ***Id.***

¶19 Moore does not present any such argument for our consideration. We generally do not consider arguments that are not adequately briefed, nor do we develop arguments for parties. *See **State v. Pettit***, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

¶20 Instead, Moore argues that his trial counsel should have objected to the jury instructions and verdict forms, which he asserts violated his right to a unanimous verdict because they did not include the specific acts alleged for each charge against him. The principle behind the requirement for a unanimous verdict is to "'ensure[] that each juror is convinced beyond a reasonable doubt that the prosecution has proved each essential element of the offense.'" ***State v. Johnson***, 2001 WI 52, ¶11, 243 Wis. 2d 365, 627 N.W.2d 455 (citation omitted).

¶21　In support of this argument, Moore cites to ***State v. Marcum***, 166 Wis. 2d 908, 480 N.W.2d 545 (Ct. App. 1992). In ***Marcum***, the defendant was charged with several counts of sexual assault; three of the counts occurred during the same general time frame. *Id.* at 914-15. Of those three counts, the defendant was convicted of one and acquitted of the other two, giving rise to the unanimity issue. *Id.* at 915. This court discussed the distinction between charging multiple counts of illegal sexual contact where there are separate volitional acts, compared to "several separately enumerated acts of illegal sexual conduct [that] were committed as one volitional act," where the crime was charged as "one count as a continuing offense" with the separately enumerated acts "simply represent[ing] alternative means of committing the crime[.]" *Id.* at 921. We concluded that because the method of charging utilized by the State in ***Marcum*** was several separate counts, it had "left the door open" as to which particular acts were to be attributed to each count, which allowed for the possibility of different jurors attributing a certain act to different counts. *Id.* at 919-20. We determined this to be a due process violation based on the unanimity requirement. *Id.* at 920.

¶22　That is not the case here. As explained above, Moore was charged with different crimes for committing different volitional acts, and there were different victims or people affected by those acts: N.J.D., who was shot; K.R., who Moore initially pointed his gun at; and other "human beings" who may have been in the area when Moore was shooting as he looked for N.J.D. Thus, there was no danger that different jurors could apply the same volitional act to both the reckless injury count and the recklessly endangering safety count, as in ***Marcum***. *See id.* In other words, this is not a case where the multiplicity challenge is based on the question of whether the statute under which the defendant is charged "creates multiple offenses or a single offense with multiple modes of commission." *See*

*State v. Derango*, 2000 WI 89, ¶14, 236 Wis. 2d 721, 613 N.W.2d 833; *Johnson*, 243 Wis. 2d 365, ¶¶11-12.  Rather, the standard instruction for jury unanimity, as provided by the trial court here, was sufficient.  *See* WIS JI-CRIMINAL 515; *see also Marcum*, 166 Wis. 2d at 918.

¶23     Therefore, we conclude that the charges brought against Moore were not multiplicitous and his right to a unanimous verdict was not violated.  As a result, he has not established that his trial counsel was ineffective for failing to raise these issues.  *See State v. Wheat*, 2002 WI App 153, ¶14, 256 Wis. 2d 270, 647 N.W.2d 441 ("Failure to raise an issue of law is not deficient performance if the legal issue is later determined to be without merit.").  Thus, the trial court did not err in denying Moore's postconviction motion without a hearing.  *See Allen*, 274 Wis. 2d 568, ¶9.  Accordingly, we affirm.

*By the Court.*—Judgment and order affirmed.

This opinion shall not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5. (2019-20).