COURT OF APPEALS
DECISION
DATED AND FILED

November 11, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2024AP430-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2020CF2732

**IN COURT OF APPEALS
DISTRICT I**

---

STATE OF WISCONSIN,

      PLAINTIFF-RESPONDENT,

  V.

CLIFFORD JR. RAY, III,

      DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Milwaukee County: FREDERICK C. ROSA, Judge. *Affirmed*.

Before Colón, P.J., Donald, and Geenen, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Clifford Jr. Ray, III, appeals the judgment convicting him of aggravated battery with intent to cause great bodily harm. He also appeals the order denying his motion for resentencing. We affirm.

## BACKGROUND

¶2     The State charged Ray with aggravated battery with intent to cause great bodily harm as a repeater and with a domestic abuse surcharge. Following a bench trial, the court found Ray guilty as charged.

¶3     The circuit court found that on the day of the crime, Ray drank heavily with the victim and the victim's aunt. There was an altercation, Ray left, and when he returned to get his keys, he attacked the victim. The court determined that the victim "sustained very, very serious injuries," constituting "serious bodily injury." The court credited the victim's testimony that Ray hit her in the face with a speaker and a bottle.

¶4     The aggravated battery charge carried a maximum sentence of ten years of initial confinement and five years of extended supervision. With the repeater enhancer, Ray was subject to a maximum sentence of 16 years of initial confinement and 5 years of extended supervision.

¶5     During the sentencing hearing, the victim recounted the personal injuries and financial struggles she sustained from Ray's assault. The State emphasized the toll of the injuries, which required "days and hours going to appointments, surgery, hospitals, cosmetic clinics, facial reconstruction." The State emphasized that the victim may still lose her eye and that she would never heal from the injuries.

¶6      The State recommended that the court impose a sentence of 16 or 17 years, bifurcated into 11 or 12 years of initial confinement and 5 years of extended supervision. The State detailed Ray's criminal history and argued that there was a need to protect the public based on Ray's "history of violence to women."

¶7      Ray's trial counsel asked the circuit court to consider the brief nature of the encounter, that Ray and the victim were heavily intoxicated, Ray's employment and training history, his course completions, and that his extended supervision was revoked because of this case. Counsel recommended three to four years of initial confinement and three to four years of extended supervision, to run concurrently with Ray's sentence in his revocation case.

¶8      The circuit court sentenced Ray to 13 years of imprisonment, bifurcated into 8 years of initial confinement and 5 years of extended supervision. In arriving at its sentence, the circuit court started by noting that the charge "is very serious, aggravated battery. There's a penalty enhancer that applies here which is particularly relevant." The court then turned to the facts of the assault, and it stated that although the victim's statements were inconsistent, the evidence showed that a "speaker had blood on it" and a bottle was recovered. The court recounted the victim's injuries in detail, including: "loose teeth, broken nose, face fractures, blown orbital fracture, split eyelid, permanent ocular nerve damage causing blindness in [the] left eye, nerve damage on the left side of [the] face causing numbness for life." The court also observed that the victim says "she's faced with the choice of whether she has her eye removed and has a prosthetic inserted or whether she leaves things as they are, which is basically an eye which apparently is not functional." The court thus concluded that Ray caused the victim "serious permanent disfigurement."

¶9      In assessing Ray's character, the circuit court found that Ray has "a history of violence" and "a pattern of behavior towards women which is very concerning and extremely violent." The court also stated that although Ray had "been through the court system a few times," whatever was done for rehabilitation "didn't stick because [he] found [him]self in this situation again." The court noted Ray's job history and also that Ray had not taken responsibility for what he did to the victim.

¶10     The circuit court stated that "there is definitely a need to protect the public" from Ray given the offense and his "prior record of assaultive behavior." The court rejected trial counsel's recommendation for a concurrent sentence because it "would unduly depreciate the seriousness of the offense." The court noted that Ray knew he had revocation "time hanging over [his] head" and still committed this very serious offense. The court additionally observed that the State's recommendation "is not a max sentence because of the habitual enhancer." In its concluding remark, the court stated: "[T]he only reason I didn't impose the 11 or 12 years [of initial confinement] that [the State] requested is because of the alcohol component here and because of the immediate incarceration upon commission of this offense."[1]

¶11     Ray filed a postconviction motion requesting the circuit court to vacate both the penalty enhancer and the domestic abuse surcharge and resentence him. Ray highlighted the court's articulated reasoning for the imposed sentence; specifically, the court's reliance on the wrong maximum penalty, and its

---

[1] Ray served a revocation sentence while this case was underway.

consideration of the unproven penalty enhancer as "particularly relevant" to its determination.

¶12 The circuit court partially granted the postconviction motion by vacating the penalty enhancer and the surcharge while denying resentencing. It agreed to vacate the penalty enhancer because the State did not prove the prior conviction beyond a reasonable doubt and because Ray never personally admitted it. The court went on to adopt the State's concession that the parties were not in a qualifying domestic relationship so as to justify the domestic abuse surcharge and vacated it.

¶13 The circuit court, however, denied resentencing. The court stated in its decision that its sentencing goals were not frustrated by the fact that the repeater conviction was not properly proven and that the statutory domestic relationship did not exist. The court explained that it did not add penalty enhancer time to Ray's sentence and that, at sentencing, it was "focused on the horrific injuries to the victim, the controlling dynamic in her relationship with the defendant, and his pattern of behavior towards women, which was 'very concerning and extremely violent.'" The court concluded there was a need to protect the public, and after considering all of the sentencing factors, "eight years was the minimum amount of confinement time necessary to adequately address its concerns." This appeal follows.

## DISCUSSION

¶14 "Sentencing decisions are afforded a presumption of reasonability consistent with [this court's] strong public policy against interference with the circuit court's discretion." *State v. Harris*, 2010 WI 79, ¶30, 326 Wis. 2d 685, 786 N.W.2d 409. Review by this court is deferential, limited to whether "the

5

circuit court erroneously exercised its discretion." *Id.* Due to the presumption of reasonableness, the defendant bears a "heavy burden" of proving an erroneous exercise of discretion. *Id.* An erroneous exercise of discretion occurs when a sentencing court considers an inapplicable penalty enhancer. *State v. Denia Harris*, 119 Wis. 2d 612, 624-25, 350 N.W.2d 633 (1984).

¶15    Precedent indicates that resentencing is not warranted when the sentence imposed is below the maximum amount of time applicable to the underlying offense—unless the sentencing court relies on the enhancer. For instance, in *State v. Farr*, 119 Wis. 2d 651, 350 N.W.2d 640 (1984), our supreme court explained:

> The trial judge erred in finding the defendant guilty as a repeater on this record; however, he did not use the repeater provision in enhancing the defendant's sentence, since he did not increase the sentence beyond the ten years [i.e., the maximum sentence allowed for the charged offense] which were available.

*Id.* at 661. Meanwhile, in *Denia Harris*, although the imposed sentence was less than the maximum, our supreme court concluded that the circuit court relied on the repeater provision when it expressly stated that it took the enhancer "into consideration" and imposed six months in consideration of the defendant's repeater status. *Id.*, 119 Wis. 2d at 625. The *Denia Harris* court deemed this an erroneous exercise of sentencing discretion. *Id.*

¶16    Here, Ray argues that resentencing is necessary because the vacated penalty enhancer was a part of the circuit court's sentencing rationale. He highlights that the court began its articulated rationale by stating that the "penalty enhancer … is particularly relevant." According to Ray, this shows that the court gave this factor explicit attention and used it to fashion Ray's sentence.

6

¶17     Additionally, Ray points to the following remark by the circuit court: "[T]he only reason [the court] didn't impose the 11 or 12 years [of initial confinement] that [the State] requested is because of the alcohol component here and because of the immediate incarceration upon commission of this offense." According to Ray, "[t]he only reasonable conclusion" to be drawn from this statement is that the court deducted the weight apportioned to mitigating factors from the enhanced recommendation requested by the State. He submits: "[H]ad the court understood that the State's recommendation exceeded the maximum, it may have reasonably imposed a sentence 3-4 years shorter than the applicable maximum, rather than 3-4 years less than the enhanced penalty." We are not convinced that this conclusion, which hinges on conjecture, is the only reasonable one.

¶18     Instead, a straightforward interpretation of this remark is that the circuit court declined to apply the enhancer altogether *because* of the mitigating factors. This interpretation is consistent with the rest of the court's sentencing remarks. The circuit court's focus on the ***Gallion*** factors, coupled with the absence of any language agreeing the enhancer should increase the sentence, suggest that the court decided not to apply the enhancer.[2]

¶19     While not dispositive on the issue, our conclusion is bolstered by the court's remarks in its decision denying Ray's postconviction motion. *See **State v. Vinson***, 183 Wis. 2d 297, 315, 515 N.W.2d 314 (Ct. App. 1994) (concluding the circuit court "clarified [its] intention" that it was not imposing a repeater enhancement such that reversal under ***Denia Harris*** was unwarranted); *see also*

---

[2] *See **State v. Gallion***, 2004 WI 42, ¶40, 270 Wis. 2d 535, 678 N.W.2d 197.

*State v. Fuerst*, 181 Wis. 2d 903, 915, 512 N.W.2d 243 (Ct. App. 1994) (explaining that a postconviction motion challenging a sentence affords the circuit court an opportunity to "clarify its statements" regarding its rationale). Ray has not shown clear evidence that the court's explanation in its postconviction decision was an after-the-fact rationalization of an erroneous sentence. *See State v. Robinson*, 2014 WI 35, ¶48, 354 Wis. 2d 351, 847 N.W.2d 352 ("[T]aking judges at their word is a fundamental assumption built into our legal system. In the absence of clear evidence to the contrary, we decline to assign improper motive on the part of the circuit court.").

 *By the Court.*—Judgment and order affirmed.

 This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.